### The City of Atchison v. Alex. Acheson.
#### No. 531.   (57 Pac. 248.)

1. ERROR — *Incompetent Testimony — Admission Immaterial.* The admission of incompetent testimony will not necessitate a reversal of a judgment where it is apparent that the party was not prejudiced thereby.

2. ——— *Rejection of Testimony — Subsequent Proceedings.* Reversible error cannot be predicated upon the rejection of competent testimony, where the party afterward examined the witness fully upon the matters rejected, or had an opportunity before the case was finally submitted to examine such witness fully concerning the same.

3. ——— *Instructions Examined.* Instructions requested by the defendant and refused by the court examined, and *held*, that such instructions were given, so far as applicable, in the court's general charge to the jury, and the other portions of such instructions were properly refused.

4. ——— *Incomplete Instruction — Deficiency Supplied.* Reversible error cannot be predicated upon an instruction given, which, standing alone, is incomplete, but when read in connection with the other instructions given covers all the grounds of complaint urged against it.

5. ——— *Overruling of Demurrer.* This court cannot say that the trial court erred in overruling the defendant's demurrer to the evidence, where the evidence tends to support every material allegation of the petition, and he fails to point out any particular in which it fails to establish a *prima facie* cause of action.

3—9 KAN. APP.

Error from Atchison district court; W. D. Webb, judge. Opinion filed May 10, 1899. Affirmed.

*Clifton B. Holbert,* city attorney, for plaintiff in error.

*Jackson & Jackson,* for defendant in error.

The opinion of the court was delivered by

McElroy, J.: The defendant in error brought this action against the city of Atchison to recover damages alleged to have been sustained by him in falling into a pit or opening in one of the alleys of the city.

On December 3, 1894, he was passing along on the east side of South Fourth street, in the city, at a point about 150 feet from Commercial street, the principal business street of the city, about nine o'clock in the evening, and, having occasion to urinate, he passed into an alley for that purpose. The alley was paved and was of frequent use. At a point in the alley about ten or fifteen feet from the street, the plaintiff stepped into an opening about four feet in length, twenty inches in width, and seven feet deep, which was walled with rough stone, with stone in the bottom. He was by the fall for a time rendered unconscious, bruised and injured, and had his hip-bone broken. He presented a verified claim for damages to the city council, and afterward filed his petition to recover the same.

A motion to make the petition more definite and certain was sustained, the petition was amended, and thereafter a motion to make the amended petition more definite and certain was overruled. The defendant filed an answer to the amended petition, in substance: (1) A general denial; (2) admitting that

Atchison v. Acheson.

the defendant was a municipal corporation; (3) alleging contributory negligence on the part of the plaintiff; and (4) alleging that at the time the injury occurred the plaintiff was intoxicated, that he was violating an ordinance of the city prohibiting an in toxicated person from appearing on the street, and also that he was violating a certain other ordinance prohibiting a person from an indecent exposure of his person. To this a general denial was filed by way of reply. A trial was had and the jury returned answers to special questions submitted and a general verdict for the plaintiff. The defendant moved the court (1) to set aside certain of the special findings, (2) for judgment upon the special findings, and (3) for a new trial, which motions were overruled. The defendant, as plaintiff in error, presents the case to this court for review and alleges error in the proceedings of the trial court.

The plaintiff in error contends that the court erred in admitting incompetent testimony. Herein complaint is made, first, that Doctor Wilson was permitted to testify as follows:

"Ques. What, in your judgment, will be the effect of that injury as to making that leg weaker than it was, and whether he will ever recover the natural strength of that leg? Ans. I don't think he will ever have as good use of that limb as formerly — natural strength."

The objection was upon the sole ground that the question was leading. The objection did not challenge the competency of the testimony. The question was not leading, and the objection was properly overruled. It is also complained that the plaintiff, Acheson, was permitted to testify:

"Ques. Mr. Acheson, I will ask you if you ever

have been able to carry on your farming, transact business necessary to carry on the farm, since this injury? Ans. I have not carried on any farming since.

"Q. You may state to the court and jury what the value of your time and services as lost since this injury has been to you. A. My time to me is worth $500 a year on a farm."

The plaintiff's occupation at the time he received the injury was that of a farmer, buying, feeding, selling stock, and operating a blacksmith and repair shop. He superintended and carried on farming, employing such help as occasion required, and worked in the shop. The witness had testified fully concerning the character of work performed by him previous to his injury. It was improper for the witness, under the circumstances, to testify what his time was worth to him on a farm; the testimony should have been directed to what his time was reasonably worth. However, the whole scope of the witness's testimony upon this subject tends to support the true measure of damages. The special findings of the jury show that they did not accept the plaintiff's statement of the value of his time. The jury found that the plaintiff carried on, managed and superintended his farm, and repaired plows and machinery in his shop; that his time and services were worth $340 a year, and that by reason of his injuries he was permanently disabled from carrying on his usual occupation. It does not appear that defendant was prejudiced by the error of court in this respect.

It is further complained that Ed. Phillips was permitted to testify:

"Ques. State what his condition was during the time you visited him, while he was confined to his bed, especially as to his appearing to be suffering much pain and as to complaint made by him in that re-

spect.   A.   He complained of suffering a good deal in that hip that was hurt."

The witness was present much of the time during the illness of the plaintiff at his home, assisted some in nursing and in taking care of him, and observed his appearance and apparent condition ; it was therefore competent for the witness to describe his appearance as he did, and in that connection to state of what, if anything, he complained.   (*A. T. & S. F. Rld. Co. v. Johns*, 36 Kan. 769, 14 Pac. 237.)

Complaint is made that the court erred in excluding competent testimony ; and herein, that the court improperly refused to require the plaintiff, Acheson, to answer the following questions :

"Ques.   Did you stop on the road to the court-house anywhere?

"Q.   Up to the time that you got off the train until you went to Mr. Shaw's place of business, state whether or not you visited any saloons.

"Q.   Up to the time that you went to that drug-store, state whether you had taken any drinks of intoxicating liquor.

"Q.   Did you buy anything there, at the drug-store?

"Q.   State whether or not you bought any intoxicating liquors there.

"Q.   State whether or not at that place you bought a bottle of whisky.

"Q.   State whether or not you drank any liquor at John Bowen's drug-store that evening.

"Q.   State whether or not you drank any intoxicating liquor at Turner hall at that time.

"Q.   What kind of a place was it, Turner hall?

"Q.   Was it a saloon?

"Q.   Can you state what business he was carrying on?

"Q.   Was the man's name Devoto — saloon-keeper?

"Q.   Is it not a fact that Devoto at that time kept a saloon?

"Q.   What did you stop at Devoto's for?

" Q. Did you stop at George Best's on your way to the depot, a saloon?

" Q. Did you stop at Devoto's, on the corner, another place of Devoto's ; another place Devoto runs, on the corner of Main and Third streets, on your way to the depot?

" Q. Did you stop at any other place after you left Ayers's and before you got to the depot?

" Q. State whether or not at the time you entered the alley you had just previously to that drank intoxicating liquors.

" Q. Just prior or during the evening, from the time you ate your supper — from the time you started up town from the depot the first time, up to the time you went into that alley — how many drinks of intoxicating liquor had you taken?"

And that the court refused to permit Sullivan, a deputy street commissioner, who assisted in taking the plaintiff out of the hole, to answer the following questions :

" Ques. What was his appearance as to being under the influence of liquor?

" Q. State whether or not, after you got him out, he was in the light, he appeared to be under the influence of liquor or not."

That the court struck out, on motion of plaintiff, the following testimony of Peter Ennis :

" Ques. Was there any hesitancy or thickness in his speech?  A.  His tongue was thick, and his talk was like the experience I have had with people drinking — brought to the station that had been drinking some."

That the court refused to allow Dr. W. H. Bogle, a physician who examined the plaintiff the next morning after the injury, to answer the following questions :

" Ques. What did he say, if anything, in regard as to how he was hurt, or whether he was hurt?

Atchison v. Acheson.

" Q. Doctor, what if anything, did Mr. Acheson say to you that morning in reference to how he became injured?

" Q. What did you find in making this examination?

" Q. What did he say, if anything, as to his condition at the time he was injured? "

That the court erred in refusing to permit Doctor Campbell to answer the following question :

" Ques. Suppose during the first three months of the confinement of the patient the attending surgeon would remove the splint for the purpose of permitting the bones to rub against each other, and would put the splint back again, you found the condition you now find, would you say the present condition is the result of proper or improper treatment? "

And that the court erred in refusing to permit Thomas Collier, a witness who saw the plaintiff shortly after the accident, to answer the following question :

"Ques. From the talk you heard, if any you heard, from his general appearance and action, what was his condition as to whether he was under the influence of liquor at that time? "

The questions propounded to the plaintiff, Sullivan, Ennis and Collier appear to have been improper upon cross-examination. However, the defendant afterward was permitted to examine each of the witnesses fully upon these matters, so that the error, if any, was harmless. The offered testimony of Doctor Bogle was competent and should have been admitted. It appears that by permission of the court, before the case was finally submitted, the witness was recalled by the plaintiff, the objection withdrawn, the offer made that the defendant might examine him fully upon the matters excluded, without objection, but the defendant declined further to examine the witness.

The defendant was therefore not deprived of any right by the ruling of the court and the error was immaterial. The testimony of Doctor Campbell was properly excluded. The hypothetical question was not sufficiently comprehensive to be of any benefit to the jury. The contention of the plaintiff in error upon the exclusion of competent testimony is very technical and without substantial merit.

It is contended that the court erred in refusing to submit to the jury instructions requested. At the proper time the defendant submitted and requested the court to give to the jury fifty-six special instructions, all of which were refused, but some of which, in substance, were given, so far. as applicable, in the general charge of the court to the jury. The greater portion were not applicable to the issues or the evidence in the case and were properly refused. A person is not barred from a recovery for injuries sustained by reason of an unnatural dangerous obstruction in a street or alley by the fact that the injury occurred while he was violating an ordinance, unless the injury was the proximate result of the violation. (*Phila., Wil. and Balt. R. Co. v. Phila. and Havre de Grace Steam Towboat Co.*, 64 U. S. 209; *Mohney v. Cook*, 26 Pa. St. 342.) The question whether or not the plaintiff was violating any ordinance was left to the jury by the instructions. The instructions requested by the defendant ignore the fact that the use of part of an alley for private purposes is not authorized by law; that the defendant is liable for permitting such unathorized use when damage results therefrom; and that notice to the city of the unlawful use of its streets and alleys is presumed when continued for a long period of time.

This alley was paved by the city years prior to the time of the injury; the hole was twenty inches wide,

four feet long, and seven or eight feet deep, situated
in the alley, about ten to fifteen feet east of Fourth
street, placed there for the convenience of property
owners.   The excavation was without guard, railing,
barrier or door from some time in 1893, to December
4, 1894, and was left uncovered and open much of the
time for six to eight weeks prior to the date of plain-
tiff's injuries.   One of the policemen of the city had
fallen into the hole prior to the time plaintiff was
injured.   The court properly instructed the jury upon
the questions of notice to the city, the burden of proof,
and contributory negligence.   The existence and the
dangerous condition of the hole were known to the
police officers, night jailer, city marshal, and the city
employees having charge of the streets and alleys.   It
is the duty of the city to keep its streets and alleys in
a reasonably safe condition, free from unnatural,
dangerous obstructions.   (*Smith v. City of Leavenworth,*
15 Kan. 81; *Jansen v. City of Atchison,* 16 id. 358;
*Gould v. City of Topeka,* 32 id. 485, 4 Pac. 822; *Com-
missioners of Shawnee Co. v. City of Topeka,* 39 id. 197,
18 Pac. 161; *City of Topeka v. Sherwood,* 39 id. 690,
18 Pac. 933; *City of Kinsley v. Morse,* 40 id. 578, 20
Pac. 217; *Kansas City v. Manning,* 50 id. 373, 31 Pac.
1104.)

The contention is made that the court erred in in-
structing the jury "that the burden of proving the
right to recover in this case rests upon the plaintiff,
and he must establish such right by a preponderance
of evidence; that is, he must show negligence on the
part of the city in regard to the hole in the alley where
it is claimed that the plaintiff was injured, and that
in consequence of such negligence he has sustained
injury and damages."

The contention is that the plaintiff in order to re-

cover must not only show negligence on the part of the city, but he must show that the city had knowledge of the particular defect, or that it had existed a sufficient length of time to justify the jury in inferring that the city had notice ; that he must show a knowledge on the part of the city of the existence of the defect which caused the injury, and that the instruction is not full and comprehensive. If the instruction complained of was the only one given the contention would be meritorious, but the court in its charge to the jury fully covered all questions of which complaint is made. Of course the instruction as given, standing alone, is incomplete, but, when read in connection with the other instructions upon the same question, covers all the defects urged against it.

The court properly overruled the demurrer. to the evidence. The evidence tends to prove every fact alleged in plaintiff's petition necessary to a recovery. The plaintiff in error fails to point out any particular in which the evidence fails to establish *prima facie* a cause of action, and we are unable to discover any such failure. We conclude therefore that the court properly overruled the demurrer to the evidence.

The defendant at the trial requested the court to require the jury to make its answers to certain special questions more specific, definite, and certain. The questions and answers of which complaint is made are :

"Ques. 25. On December 3, 1894, previous to five P. M. of said day, was said opening or area covered with some three boards or planks? A. No, we do not so consider it."

"Q. 27. Late in the afternoon or evening of December 3, 1894, did one Busenbak deliver a wagonload of cobs to said building next north of the alley ? A. No, we do not consider there were any cobs delivered there."

There was evidence offered to show that a load of cobs was delivered and placed in the excavation on the evening preceding the injury to plaintiff. The party who claimed to have hauled the load of cobs testified that he placed it in the excavation, and thought that it practically filled it. If this testimony was true, it would have been apparently impossible for plaintiff to have been injured as he was. The fact that the plaintiff was injured, that there was nothing to break his fall, nothing to prevent his injury, strongly tended to show that the cob hauler was mistaken in his dates, and the jury probably so regarded his testimony. The physical facts were in direct conflict with the verbal statements of the witness with reference to this transaction. The questions were sufficiently answered for all practical purposes. Error is also claimed in that the court did not require the jury to answer other special questions submitted. If the answers above set out are sufficient and true, such others questions did not require answers.

After the jury had retired to consider its verdict, the foreman sent a communication to the court in writing, as follows: "Hon. Judge Webb: Can the jury answer any of the special questions prepared by the attorneys in any other way than by yes or no?" To which the court replied in writing as follows: "The jury can and should answer all the questions according to the facts as they may believe them to be from the evidence. These answers may be by yes or no, or more fully, or in any way so as to state the facts as shown by the evidence. Please preserve this slip and return it with your verdict." There is nothing in the conduct of the court in this regard which would necessarily prejudice the rights of the defend-

ant, nor is there any showing that defendant was prejudiced thereby.

The contention is also made that the court erred in overruling the motion for judgment upon the findings of the jury for the defendant. Both parties submitted many special questions to the jury, more than 100 of which were answered, and not one of them is inconsistent with the general verdict. The plaintiff was entitled upon the special findings to recover; the amount of his recovery was for the jury to determine. The excavation was in a paved alley, apparently with the consent of the city, known to many of the city officers, permitted to exist for a long period of time, frequently in a dangerous condition; the plaintiff was, under the findings of the jury, performing no act which was unlawful or against public decency or morals, but was acting as a prudent, cautious man when he fell into the excavation and received permanent injury, being made a cripple for life. The findings of the jury upon all disputed questions, all questions submitted to it, are consistent with the general verdict.

The court properly overruled the motion of the defendant for judgment upon the special findings. The motion for a new trial was properly overruled.

The judgment is affirmed.