School District No. 46, Kane, Cook and DuPage Counties, Illinois, a Body Politic and Corporate, Plaintiff-Appellee, v. A. J. Del Bianco, et al., Defendant-Appellant.

Gen. No. 65–153.

Second District.

March 14, 1966.

Gordon F. DeHart, of Aurora, and Leibman, Williams, Bennett, Baird & Minow, of Chicago, for appellant.

Carbary, Carbary & Chapski, of Elgin, for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

This case involves the propriety of the order of the circuit court denying defendant's motion, pursuant to section 2 of the Uniform Arbitration Act (Ill Rev Stats 1963, c 10, § 102), for an order on plaintiff and defendant to

proceed to arbitration and to stay proceedings in said cause, and the appealability of such order.

Plaintiff, a School District, on March 1, 1962, entered into a standard form owner-architect agreement with defendant architect, whereby the defendant was to perform professional services in connection with the erection of the Streamwood Elementary School. The agreement outlined the basic services to be rendered by defendant; specified the extra services of the architect and the plaintiff's responsibilities; defined construction costs as well as the architect's expense; provided for payments to the architect and other routine matters; and provided for arbitration, as follows:

> "Arbitration of all questions in dispute under this Agreement shall be at the choice of either party and shall be in accordance with the provisions, then obtaining of the Standard Form of Arbitration Procedure of The American Institute of Architects. This Agreement shall be specifically enforceable under the prevailing arbitration law and judgment upon the award rendered may be entered in the court of the forum, state or federal, having jurisdiction. The decisions of the arbitrators shall be a condition precedent to the right of any legal action."

The Standard Form of Arbitration Procedure of The American Institute of Architects, by agreement of the parties, established the procedure to govern any arbitration conducted pursuant to the agreement.

Plaintiff filed a three-count complaint against the general contractor, the architect and the bonding company in connection with the construction of the Streamwood Elementary School. Count II, against the defendant architect, alleged the execution of the aforesaid agreement; performance by plaintiff; the duty of defendant to exercise the degree of skill and diligence contracted for in preparing plans, specifications and in superintending the con-

148

struction of the building; his negligence in so doing to the extent that the building settled, causing cabinets, doorways and floors to become uneven and plumbing facilities to malfunction; that the school building has never been completed as a result of defendant's failure to exercise such reasonable skill and diligence; demanded of defendant that he rectify such defective and improper work; alleged his failure and refusal to make repairs or replacements; and stated that plaintiff would be obliged to employ labor and procure materials to complete said school under proper plans and specifications, to its damage in the sum of $150,000.

After service of summons, defendant filed the aforesaid motion to stay the proceedings and for an order directing the plaintiff and defendant to proceed to arbitration. This motion alleged the execution of the contract; the arbitration clause therein; that the defendant had requested the plaintiff to submit to arbitration the disputes between them as alleged in Count II of the complaint; and that defendant had failed and refused to comply with defendant's request within a reasonable time.

The trial court denied this motion, and defendant filed motion for its reconsideration and a motion for finding pursuant to section 50(2) of the Civil Practice Act (Ill Rev Stats 1963, c 110, par 50(2)), that there was no just reason for delaying an appeal from the order denying defendant's original motion. These motions were denied and this appeal followed. The trial court properly denied defendant's motion for such finding, but under our view of this case, such ruling was without consequence.

Defendant urges that jurisdiction lies here in that this is an interlocutory appeal under Supreme Court Rule 31 (Ill Rev Stats 1963, c 110, par 101.31) from the order of the trial court denying defendant's motion for a stay order; and that the trial court should have ordered the plaintiff and defendant to arbitrate.

149

Plaintiff contends that the appeal is piecemeal, not authorized by Supreme Court Rule 31, and should be dismissed; and that the order denying the motion for arbitration was properly entered pursuant to sections 1 and 2 of the Uniform Arbitration Act (Ill Rev Stats 1963, c 10, pars 101 and 102).

The threshold consideration is the propriety of this appeal. It does not fall precisely within the interlocutory orders named as appealable in paragraph (1) of Supreme Court Rule 31. Defendant recognizes this circumstance, but argues that the motion for a stay was in effect a motion for an injunctional order, and that the order denying such stay constituted an appealable interlocutory order refusing an injunction under Supreme Court Rule 31(1).

This question was considered in Valente v. Maida, 24 Ill App2d 144, 164 NE2d 538 (1st Dist 1960). At pages 149 and 150, the court stated:

"Valente asserts that the order entered on October 23, 1959, in the first case is an injunctional order and appealable under Section 78 of the Civil Practice Act. The insurer says that the stay order is not an injunctional order and therefore not appealable. . . . In cases involving the interpretation of a statute providing for the reviewability of interlocutory injunctional orders the Supreme Court of the United States holds that a 'stay' order is synonymous with an injunctional order and therefore appealable. Enelow v. New York Life Insurance Co., 293 US 379; Shanferoke Coal & Supply Corp. v. Westchester Service Corp., 293 US 449; Ettelson, et al. v. Metropolitan Insurance Co., 317 US 188. The acceptance of insurer's argument would place a litigant who obtained a 'stay' in a better position than a litigant who obtained an 'injunction.' The courts will look to the substance rather than to the form. We are of the opinion that the 'stay' order entered in the first

150

case is an injunctional order and appealable under Section 78 of the Civil Practice Act."

Section 78 of the Civil Practice Act referred to in Valente was repealed, effective January 1, 1964, and Supreme Court Rule 31 was revised, effective on said date, to replace such repealed section.

In Shanferoke Coal & Supply Corp. v. Westchester Service Corp., 293 US 449, 55 S Ct 313 (1934), the Supreme Court had before it facts similar to the case at bar. At pages 451 and 452, Mr. Justice Brandeis pertinently stated:

"The order of the District Court denying the stay was not a final judgment appealable under section 128 of the Judicial Code, as amended (28 USCA Sec 225). Being an interlocutory order, it was appealable to the Circuit Court of Appeals under section 129, as amended (28 USCA Sec 227), only if the denial of the stay should be deemed the denial of an injunction. Compare General Electric Co. v. Marvel Co., 287 US 430, 432, 53 S Ct 202, 77 L Ed 408. That question we must determine. . . . For the reasons stated in Enelow v. New York Life Insurance Co., 293 US 379, 55 S Ct 310, 79 L Ed 440, decided this day, an order granting or denying a stay based on an equitable defense or cross-bill interposed in an action at law under section 274b (28 USCA Sec 398) is appealable under section 129, as amended (28 USCA Sec 227). We are of the opinion that the special defense setting up the arbitration agreement is an equitable defense or cross-bill within the meaning of section 274b, and that the motion for a stay is an application for an interlocutory injunction based on the special defense."

■ Likewise, we conclude that the order denying plaintiff's motion for stay was not a final order or judgment appealable to this court under section 7 of article VI

151

of the Illinois Constitution, but rather it was an interlocutory order appealable to this court under Supreme Court Rule 31 only if the denial of the stay should be deemed a denial of an injunction; and that the motion for stay was, in substance, an application for an interlocutory injunction based on the affirmative defense of arbitration.

The power to grant or refuse such stay appertains to equity in the enforcement of equitable principles, and amounts to granting or refusing injunctive relief. The use of injunctions to stay actions at law was almost coeval with the establishment of chancery jurisdiction. Pomeroy, in his work on Equity Jurisprudence, 3rd Edition, Volume III, section 1360, page 393, stated:

> "It is no exaggeration to say that, during its formative period, the equitable jurisdiction was built up through the instrumentality of the injunction restraining the prosecution of legal actions, where the defendants sought the aid of chancery which alone could take cognizance of the equities that would defeat a recovery at law against them. This was not accomplished, however, without a long and severe opposition from the common law judges, which continued until the reign of James I. The jurisdiction then firmly established by judicial authority, has never since been questioned."

In the case at bar, it matters not that the application for stay order was heard in the pending proceeding rather than in a separate suit for injunctive relief. Under the broad principles of the Civil Practice Act (Ill Rev Stats 1963, c 110), there is an unlimited power to join and plead claims and defenses without reference to their legal or equitable character, subject to the power of the court to order separate trials on any of the issues when it is deemed expedient.

The application was for a stay order, injunctive in nature, and its denial was in effect the denial of an in-

152

terlocutory injunction. Consequently, such order was appealable under Supreme Court Rule 31 and the plaintiff's motion to dismiss the appeal—which was taken with the case—is denied.

The Uniform Arbitration Act (Ill Rev Stats 1963, c 10, pars 101–123), adopted in 1961, substantially follows the Uniform Act promulgated by the National Conference on Unform State Laws, adopted in 1955. The prior Illinois Act related only to existing controversies (Cocalis v. Nazlides, 308 Ill 152, 139 NE 95 (1923)), and it had been under criticism for a considerable time because of its failure to provide a modern framework within which the arbitration mechanism could function. Under both the common law and the prior Illinois Act, the restrictive pressures of judicial decisions had rendered arbitration practically nonexistent. (A Uniform Arbitration Act for Illinois? U of Ill Law Forum, Vol 1965, Summer No. 2, page 297, et seq.)

Section 1 of the Illinois Uniform Act granted legal validity and enforcement to arbitration agreements to settle future, as well as existing disputes. Section 2(a), (b), (c) and (d) of the Act, empowered the court upon application of a party, to compel arbitration; to stay arbitration; to stay court action pending arbitration; and section 2(a) and (b) expressly authorized a court to protect a party from being compelled to submit to arbitration in the absence of an agreement to do so. See: Historical and Practice Notes, Herbert B. Olfson, SH Ill Anno Stat, Chap 10, sec 102; and Some Comments on Arbitration Legislation and the Uniform Act—Maynard E. Pirsig—10 Vanderbilt Law Review, page 685, et seq. (1956–1957).

■ To our knowledge, there are neither Illinois legislative records disclosing specific legislative intent underlying these statutory provisions, nor cases construing this Uniform Act with reference to the conflicting contentions of the parties concerning the arbitrability of disputes

153

such as the one in litigation. Under such circumstances, it has been properly held that "the records of the National Conference of Commissioners on Uniform Laws, and particularly the writings of the chairman of the subcommittee that undertook the drafting of the Act, disclose that the problem of judicial interference with the question of arbitrability was intended to be governed by section 2 of the Uniform Act. . . ." Layne-Minnesota Co. v. Regents of University of Minnesota, 266 Minn 284, 123 NW2d 371, 376 (1963).

In the case at bar, the parties expressly agreed to submit to arbitration "all questions in dispute under this Agreement." However, plaintiff argues that the agreement to arbitrate does not require it to submit those controversies arising out of the relationship of the parties, and that the questions in dispute so arose and are not within the terms of the arbitration agreement. This case is before us on Count II of the complaint and the aforesaid motions, and under this posture it may be said that the intention of the parties, as to the scope of the arbitration agreement, is fairly debatable. This poses a question of construction of section 2 of the Act and the contract as to whom, under these circumstances—the court or the arbitrators—shall make this determination.

If the dispute is clearly within the arbitration clause, the court should order arbitration. However, if the dispute is clearly not within the clause—as in the case where the agreement was limited to disputes as to the quantity requirements of the purchaser, and the claim sought to be arbitrated was for damages due to the inferior quality of merchandise delivered—then there is no agreement to arbitrate, and the court should deny arbitration.

However, if the dispute is over the scope of the issues intended to be submitted to arbitration and they are not clearly defined in the arbitration clause or agreement, as in the case at. bar, then a construction by the court

of the clause or contract in the light of section 2 would end in destroying the agreement of the parties that a specific term or the terms and meaning of the arbitration clause should be determined by the arbitrators. See: Arbitrability and the Uniform Act—Maynard E. Pirsig— 19 Arbitration Journal, page 154, et seq. (1964) ; and Some Comments on Arbitration Legislation and the Uniform Act, supra.

█ If such terms and meaning are determined by the court in defining the scope of the issues to be arbitrated, then there is only the limited factual question left for the arbitrators to consider. We believe it within the contemplation of section 8 of the Act (Ill Rev Stats 1963, c 10, par 108), unless the arbitration agreement provides otherwise, that the parties are presumed to agree that everything—both as to law and fact—necessary to a decision, is included within the authority of the arbitrators. See: Continental Materials Corp. v. Gaddis Min. Co., 306 F2d 952, 954 (CA 10th, 1962).

█ Where there is an agreement to arbitrate and its scope is reasonably in doubt, the issue of arbitrability should be initially determined by the arbitrators, subject to the protective reservations of section 12 of the Act— under which the court may vacate an award under the varying conditions therein specified. Layne-Minnesota Co. v. Regents of University of Minnesota, supra, pp 377, 378.

This view is further buttressed by the fact that under section 11 of the prior Act (Ill Rev Stats 1959, c 10, par 11), fraud, corruption or other undue means, misbehavior by the arbitrators, and legal defects, were the only grounds for vacating an award, while under section 12(a) (5) of the new Uniform Act (Ill Rev Stats 1963, c 10, par 112(a) (5)), upon application of a party, the court shall vacate an award where: "There was no arbitration agreement and the issue was not adversely determined in proceedings under section 2 and the party did not

155

participate in the arbitration hearing without raising the objection; . . . ." If it was intended that the court should initially determine such issue of arbitrability, there would be little reason for placing authority in the court to vacate an award where the arbitrators, in making an award, exceeded the scope of the arbitration agreement.

It is also significant that section 2(b) of the Act provides that upon preliminary application, the court shall summarily determine the issue of arbitrability, and section 2(e) specifies that the court is barred from refusing arbitration "on the ground that the claim in issue lacks merit or bona fides or because any fault or grounds for the claim sought to be arbitrated have not been shown," while upon application to vacate the award under section 12(a)(3)—which provides for the vacation of an award where the "arbitrators exceed their powers"—there is no statutory restriction upon the power of the court.

██ The foregoing provisions of the Act militate against the contention that a party to an arbitration agreement may choose between the judicial or arbitration forum. The sole issue under the Act on the preliminary hearings to compel or stay arbitration, is whether there is an agreement to arbitrate. If so, the court should order arbitration; if not, arbitration should be refused. Upon this simple formula, the preliminary hearings on such issue should be determined. See: Some Comments on Arbitration Legislation and the Uniform Act, supra.

██ If arbitration fails to dispose of the controversy, the parties may then litigate the issues of arbitrability, and the arbitration proceeding which took place should be an aid to both the litigants and the Court in the subsequent court hearings. Layne-Minnesota Co. v. Regents of University of Minnesota, supra, p 377.

██ Arbitration—as settlements, releases and covenants not to sue—simply removes controversies from the area of litigation. It is looked upon with favor by

156

federal, state and common law. Reserve Min. Co. v. Mesabi Iron Co., 172 F Supp 1, 9 (DC Minn 1959), affirmed 270 F2d 567 (CA 8th, 1959). Further reason for such view is found in the crowded condition of court dockets throughout the nation.

▇▇ Even though resort to courts is authorized, the basic intent of the Act is to discourage litigation and foster the voluntary resolution of disputes in a forum created, controlled and administered by the agreement to arbitrate. (Layne-Minnesota Co. v. Regents of University of Minnesota, supra, pp 374, 375.)

▇▇▇ The Uniform Act contemplates that arbitrators will be men who understand the terminology, practices, customs and usages of the trade, business or profession involved in the dispute—men, who can bring knowledge, expertise and understanding to the solution of the controversy. It encourages the self adjustment of minor disputes, subject to court supervision, with due recognition of the right to present material evidence, to cross examine witnesses, to have the aid of counsel, and to all procedural safeguards of an orderly hearing, including notice. It vests in the arbitrators power to subpoena witnesses and records, administer oaths, and to permit the taking of evidence depositions in a proper case. Ill Rev Stats 1963, c 10, pars 105, 106 and 107. It was designed to meet the dynamic commercialism of today. (A Uniform Arbitration Act for Illinois? supra.)

▇▇ When the plaintiff and defendant executed the contract in question, containing the aforesaid arbitration clause, the Uniform Act was in force in Illinois, and it was deemed a part of the contract the same as though expressly incorporated therein. Schiro v. W. E. Gould & Co., 18 Ill2d 538, 544, 165 NE2d 286 (1960). The parties were then irrevocably committed to arbitrate "all questions in dispute under this agreement." (Ill Rev Stats 1963, c 10, par 101.)

157

▆▆▆ In view of these circumstances, the trial court erred in denying defendant's motion to stay the proceedings and erred in refusing to direct the plaintiff and the defendant to proceed to arbitration. Consequently, such orders of the trial court are reversed and the cause is remanded with instructions to proceed in accordance with the views expressed herein.

Reversed and remanded with instructions.

MORAN, P. J., concurs.

ABRAHAMSON, J., dissenting.