WAYNE P. GRANE, Plaintiff-Appellant, v. HUBERT GRANE, JR., *et al.*, Defendants-Appellees.

Second District   No. 83—982

Opinion filed January 28, 1985.

Michael G. Thomas, of Cassidy, Schade & Gloor, of Chicago, for appellant.

Rodney W. Equi, of Donovan & Roberts, P.C., of Wheaton, and James J. Casey and A. Benjamin Goldgar, both of Keck, Mahin & Cate, Joseph F. Cerveny, of Pfeffer, Becker, Gabric & Cerveny, Dennis M. O'Brien, and Richard F. Hudzik, all of Chicago, for appellees.

JUSTICE LINDBERG delivered the opinion of the court:

Plaintiff, Wayne P. Grane, appeals from an order of the circuit court of Du Page County denying his motion to stay arbitration and to conduct a hearing pursuant to section 2(b) of the Uniform Arbitration Act (Ill. Rev. Stat. 1981, ch. 10, par. 102(b)). Plaintiff contends the verified allegations in his second amended complaint established that he was fraudulently induced to sign the arbitration agreement. Because we conclude these allegations established a substantial and *bona fide* dispute as to the existence of an agreement to arbitrate, we reverse and remand the cause to the trial court for a section 2(b) hearing.

Plaintiff is the son of defendant Hubert Grane, Sr. (Grane, Sr.), and the brother of defendants Hubert Grane, Jr. (Grane, Jr.), Fred C. Grane and Daniel T. Grane. The corporate defendants are companies owned by the Grane family and Harris Bank, which is a trustee of certain Grane family trusts. The individual parties signed an agreement and understanding on December 10, 1980, which invested defendant Thomas J. Boodell, Jr. (Boodell), with the "sole authority to resolve any conflict existing between the Parties and to compromise any disputes concerning equity interests as he, in his sole judgment, after consultation with Mr. Hubert Grane, Sr., shall determine." A dispute arose concerning the division of the family businesses and plaintiff filed a complaint on June 30, 1983, seeking a declaratory judgment determining the rights, interests and liabilities of the parties in the Grane family businesses. Plaintiff also filed an *ex parte* petition to compel defendants to produce certain business books and records which the court granted on July 7, 1983.

In response, Grane, Jr., and certain corporate defendants filed a motion to vacate the order to compel, arguing in part that the parties had entered into an arbitration agreement requiring arbitration of all intrafamily disputes. Plaintiff thereupon filed a motion for leave to file a second amended complaint which contained a count requesting rescission of the arbitration agreement. The trial court allowed plaintiff to file the motion and the second amended complaint with the court, but reserved ruling on the decision whether to allow the motion.

Sometime during September or October 1983, Boodell began conducting an arbitration proceeding to resolve the family disputes, but plaintiff elected not to participate. On October 28, 1983, plaintiff filed a motion to stay the arbitration proceeding, contesting the validity and enforceability of the 1980 arbitration agreement, which the court denied that same day. Plaintiff filed a notice of appeal from the order denying the motion to stay on November 4, 1983. The trial court denied on November 7, 1983, plaintiff's motion to stay all court and arbitration proceedings pending appeal of this cause. On November 9, 1983, plaintiff filed a motion renewing his request that the trial court grant plaintiff leave to file his second amended complaint, which the court granted on November 10, 1983.

■■ The first issue which this court must address is whether it has jurisdiction to entertain this appeal. Boodell contends that this appeal must be dismissed as taken from a nonappealable interlocutory order. Boodell argues that the purpose of facilitating arbitration which underlies the Illinois Uniform Arbitration Act (Ill. Rev. Stat.

1981, ch. 10, par. 101 *et seq.*) is thwarted by allowing appeals from orders *denying* motions to *stay* arbitration. Citing decisions from other jurisdictions holding nonappealable orders denying motions to stay arbitration, and relying on the rule that judicial decisions of other States adopting the Uniform Arbitration Act should be given great deference to encourage uniformity, Boodell requests this court to rule that the instant interlocutory order is not appealable pursuant to the Illinois Uniform Arbitration Act. Ill. Rev. Stat. 1981, ch. 10, par. 101 *et seq.*

Section 18 of the Illinois Uniform Arbitration Act (Ill. Rev. Stat. 1981, ch. 10, par. 118) provides that "[a]ppeals may be taken in the same manner, upon the same terms, and with like effect as in civil cases." The order entered by the trial court here is interlocutory and therefore is governed by Supreme Court Rule 307, which provides that "[a]n appeal may be taken to the Appellate Court from an interlocutory order of court (1) granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction." (87 Ill. 2d R. 307(a)(1).) The jurisdictional question thus presented is whether the trial court's denial of plaintiff's motion for a stay of arbitration is analogous to an injunction and therefore appealable as an interlocutory order.

Both parties contend and our research confirms that no Illinois court has decided this precise question. (See Annot., 6 A.L.R.4th 652 (1981).) Boodell argues that because the Illinois arbitration statute is patterned after the Uniform Arbitration Act, we should look to and follow the decisions in other States which likewise have adopted the Uniform Arbitration Act. In the three cases cited by Boodell (*School Committee v. Agawam Educational Association* (1977), 371 Mass. 845, 359 N.E.2d 956; *Miyoi v. Gold Bond Stamp Co. Employees Retirement Trust* (1972), 293 Minn. 376, 196 N.W.2d 309; *Hodes v. Comprehensive Health Associates, P.A.* (1983), 9 Kan. App. 36, 670 P.2d 76), however, the courts specifically based their decisions on the fact that their State arbitration statutes enumerated the orders which were appealable and did not include an order denying a motion to stay arbitration as an appealable order. Likewise, section 19(a) of the Uniform Arbitration Act on which these State statutes are based enumerates certain orders from which immediate appeals can be taken, but fails to include an order denying a motion to stay arbitration. See 7 Uniform Laws Annotated 77 (1978).

As emphasized by plaintiff, the Illinois legislature apparently elected not to adopt the language of section 19(a) of the Uniform

Arbitration Act on appeals and instead adopted with some variation the language of section 19(b) of the Uniform Arbitration Act that appeals can be taken as they are allowed in civil cases (Ill. Rev. Stat. 1981, ch. 10, par. 118). Based upon the distinction between the language governing appeals in the Illinois and Uniform Acts, this court need not follow cases construing different statutory language of other State arbitration acts which are patterned after the Uniform Arbitration Act.

The most instructive Illinois decision on this question is *School District No. 46 v. Del Bianco* (1966), 68 Ill. App. 2d 145, 215 N.E.2d 25, wherein this court considered whether an order denying a party's motion to *compel* arbitration and to stay court proceedings was appealable. In ruling that the order was appealable, the *Del Bianco* court recognized that the order was not specifically enumerated in Supreme Court Rule 31 (Ill. Rev. Stat. 1963, ch. 110, par. 101.31), the predecessor statute to Supreme Court Rule 307 (87 Ill. 2d R. 307). Despite its absence from the statute, however, the order was interpreted by this court to be appealable as "amount[ing] to granting or refusing injunctive relief." (*School District No. 46 v. Del Bianco* (1966), 68 Ill. App. 2d 145, 152, 215 N.E.2d 25, 28.) The *Del Bianco* rule recently has been cited favorably by this court. See *J&K Cement Construction Co. v. Montalbano Builders, Inc.* (1983), 119 Ill. App. 3d 663, 456 N.E.2d 889; *Kelso-Burnett Co. v. Zeus Development Corp.* (1982), 107 Ill. App. 3d 34, 437 N.E.2d 26; see also *Notaro v. Nor-Evan Corp.* (1983), 98 Ill. 2d 268 (order denying defendant's motion to dismiss lawsuit and compel arbitration was an appealable, interlocutory order).

Boodell seeks to distinguish the *Del Bianco* court's analogy of a motion to stay court proceedings to an interlocutory injunction on the basis that here, the order appealed from was a denial of a motion to *stay* arbitration, while *Del Bianco* involved the denial of a motion to *compel* arbitration. This distinction was considered persuasive by the Court of Appeals for the Seventh Circuit in construing section 1292(a)(1) of the United States Code (28 U.S.C. sec. 1292(a)(1) (1976)), which authorizes the immediate appeal of orders granting or denying preliminary injunctions. (*Timberlake v. Oppenheimer & Co.* (7th Cir. 1984), 729 F.2d 515.) This language is nearly identical to that contained in Supreme Court Rule 307 governing interlocutory appeals of orders granting or denying injunctions. In *Timberlake*, the plaintiff filed suit in Federal court against the brokerage house alleging churning and joined the pendent claims under State law. The defendants moved the district court for an order

compelling arbitration of the pendent claims, but staying the arbitration until the court disposed of the plaintiff's Federal claims. The court allowed the arbitration, but refused the stay order, and the defendants appealed complaining about the refusal to stay. The Seventh Circuit examined the decisions of the Federal circuit courts which were approximately evenly divided as to whether an order denying a motion to stay arbitration was appealable. Concluding that the order was not appealable, the *Timberlake* court cited as persuasive the distinction between orders denying motions to *stay* arbitration involved in that case and motions to *compel* arbitration.

> "If a stay of arbitration is granted, the arbitration is halted, and an immediate appeal, if it leads to reversal of the stay, may actually expedite the arbitration. But if refusals to stay arbitration are appealable, then anyone who wants to appeal from an order to arbitrate need only ask for a stay of the order; the denial of this request would be appealable; and the appellant would have a shot at persuading the district court or the court of appeals to stay the arbitration pending appeal." *Timberlake v. Oppenheimer & Co.* (7th Cir. 1984), 729 F.2d 515, 519; see generally Note, *Interlocutory Appeal Of Orders Granting Or Denying Stays Of Arbitration,* 80 Mich. L. Rev. 153 (1981).

Courts which refuse to distinguish between the granting and refusing of a stay of arbitration, the *Timberlake* court noted, emphasize the distinction is difficult to reconcile with the wording of section 1292(a)(1) "which allows appeals indifferently from orders denying as well as granting injunctions." (729 F.2d 515, 519.) The language of Supreme Court Rule 307 likewise makes no distinction between orders granting or refusing injunctions. In interpreting the language of Rule 307, this court in *School District No. 46 v. Del Bianco* (1966), 68 Ill. App. 2d 145, 215 N.E.2d 25, focused on the effect of the stay order and analyzed whether its effect was similar to that of an injunction. Nowhere in its opinion did this court cite as support for its conclusion that immediate appellate review of the order denying the motion to compel arbitration furthered the legislative goal of prompt private dispute resolution. Despite recognition of the laudatory goal of promoting arbitration, therefore, our determination as to the appealability of an interlocutory order cannot be premised upon whether appealability accelerates or delays the arbitration process. Rather, the proper inquiry is whether the stay order is similar to an injunction and thereby appealable pursuant to Rule 307. In *Del Bianco,* we held that orders denying motions to compel

arbitration were appealable as analogous to an injunction. We are unable to distinguish in terms of injunctive effect between an order which denies a motion to compel arbitration and stay court proceedings (*School District No. 46 v. Del Bianco* (1966), 68 Ill. App. 2d 145, 215 N.E.2d 25), and an order which denies a motion to stay arbitration and commence court proceedings as is involved here.

The structure of the Illinois arbitration statute further suggests that the legislature intended courts to determine at the outset whether the parties had in fact entered into an agreement to arbitrate. Section 2 states that the court shall hold a hearing to determine the existence of an agreement to arbitrate if that issue is in substantial and *bona fide* dispute and empowers the court to stay a pending arbitration proceeding until the existence of the agreement is established. By providing a mechanism for courts to determine if an agreement exists prior to the commencement of the arbitration process, our legislature demonstrated that the goal of promoting arbitration is not to be valued to the exclusion of all other interests. Rather, the legislature recognized as also deserving of consideration the countervailing interest that only parties who have entered into an agreement to arbitrate should be compelled to submit to arbitration. Were we to hold that an order denying a motion to stay arbitration was unappealable, the statutory mechanism of allowing a judicial determination as to the existence of an arbitration agreement prior to arbitration would in part be emasculated. A party upon a showing of a substantial and *bona fide* dispute could trigger a section 2 hearing, but if the trial court determined that an agreement existed, then he would be unable to obtain a final determination—appellate review—until after the arbitration was completed and the award was confirmed.

Even the goal underlying arbitration—prompt resolution of the parties' dispute—could be frustrated were this court to prevent appeal of this order until after completion of the arbitration. For example, assuming that an arbitration agreement did not exist, but that the trial court incorrectly determined otherwise, the party opposing arbitration would not be able to obtain a correct ruling until after the arbitration had ended and review was sought in the appellate court. Only upon finding no agreement to arbitrate would the reviewing court reverse the trial court's contrary ruling and void the arbitration decision. Throughout this process, both parties would have expended time and financial resources to conduct an unnecessary and unauthorized arbitration. (See *Hayes v. Allstate Insurance Co.* (7th Cir. 1983), 722 F.2d 1332, 1340 (Posner, J., dissenting)

("Since arbitration may be protracted *** a plaintiff forced into arbitration against his will may be irreparably harmed, for if it later turns out that the matter should not have been submitted to arbitration he will not be able to recover his lost time and expense").) In contrast, were the trial court's order appealable pursuant to Supreme Court Rule 307, the reviewing court would have ruled on the existence of an arbitration agreement before the commencement of arbitration. Based upon this hypothetical, therefore, the immediate appealability of the trial court's order would facilitate and not delay the speedy resolution of the parties' dispute by eliminating the necessity for participating in an unauthorized arbitration proceeding. (See, *e.g., Merit Insurance Co. v. Leatherby Insurance Co.* (7th Cir. 1983), 714 F.2d 673, *cert. denied* (1983), 464 U.S. 1009, 78 L. Ed. 2d 711, 104 S. Ct. 529 (arbitration proceeding lasting three years).) For these reasons, we hold that the trial court's order denying defendant's motion to stay arbitration was appealable on the authority of Supreme Court Rule 307 and therefore, we have jurisdiction to consider the merits of the parties' dispute.

■ Plaintiff asserts that the trial court erred in failing to hold a hearing on the existence of an agreement to arbitrate the parties' dispute. The arbitration statute in Illinois reads in pertinent part:

"On application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate. That issue, when in substantial and bona fide dispute, shall be forthwith and summarily tried and the stay ordered if found for the moving party. If found for the opposing party, the court shall order the parties to proceed to arbitration." (Ill. Rev. Stat. 1981, ch. 10, par. 102(b).)

On October 28, 1983, plaintiff presented a motion to stay the arbitration proceedings and requested a hearing as to the existence, validity and enforceability of the arbitration agreement. In the alternative, plaintiff requested that the trial court "temporarily remove the Stay in the present proceedings and thereby allow the Plaintiff to make his objections of record, with respect to the validity and enforceability of the subject alleged Arbitration Agreement."

Based upon the statutory language, plaintiff was required to establish a substantial and *bona fide* dispute concerning the existence of an agreement to arbitrate. (Ill. Rev. Stat. 1981, ch. 10, par. 102(b).) Section 1 states the bases upon which an absence of an agreement to arbitrate can be found to exist:

"A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to

arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable save upon such grounds as exist for the revocation of any contract ***." Ill. Rev. Stat. 1981, ch. 10, par. 101.

The essence of plaintiff's argument is that he was fraudulently induced to sign the agreement and that fraud in the inducement vitiates the contract. A close examination of the record is required to discover what kind of showing plaintiff made with respect to his fraud claim. In his arguments on his motion to stay arbitration proceedings or in the alternative to make record, plaintiff referred to his second amended complaint, which contained a count in rescission. Plaintiff also stated that he objected "to the validity of the whole arbitration agreement." Plaintiff continued that he interpreted the Illinois arbitration statute as granting him the right to a judicial hearing and "if the Court finds for us, then the Court can, of course, stay the proceeding, since there is no underlying arbitration agreement." Therefore, plaintiff requested the court to conduct a hearing on the validity of the arbitration agreement.

In response to plaintiff's argument on October 28, 1983, defendant Boodell acknowledged to the trial court that plaintiff "has objected strenuously to the arbitration agreement that he entered into and has told your Honor that it has no force and effect." Boodell contended at the hearing that the arbitration agreement attached to plaintiff's complaint established an agreement to arbitrate, but also acknowledged that "[t]wo of those members [of the Grane family] have challenged the validity since the time it was entered into" and that plaintiff had challenged the agreement as early as December 1982.

Addressing Boodell's argument that an agreement to arbitrate unquestionably existed, plaintiff admitted that he did sign the December 1980 agreement, but asserted the agreement was invalid. The trial court then recapitulated plaintiff's contention:

"THE COURT: You acknowledge there is an agreement, but you question its validity.

Is that correct?

MR. FISCHER: Absolutely.

And under the statute it's clear that we have a right to a hearing.

Mr. Boodell is correct that the statute does not say that you must stay his arbitration before the hearing. It does not say that.

However, I think just the general equitable powers that

this Court has when you know that an arbitration award is coming down so soon I think allow you to stay the proceeding until we have a hearing.

We could have the hearing very quickly, and then the whole thing could be resolved."

The court then ruled:

"I think you have preserved the question of attacking the validity of the arbitration agreement.

But I think the existence of the arbitration agreement signed by your client, as well as signed by all the other parties, I think the law regarding arbitration and the deferring by a Court to arbitration requires that the arbitration continue."

Both parties contend, and we agree, that the trial court did not in the preceding portion of the trial court record conduct a section 2 hearing. Rather, the trial court in effect denied plaintiff's motion to stay arbitration either because it did not believe that a substantial and *bona fide* dispute had been established, or because it concluded without a hearing that an agreement to arbitrate existed. Our task based upon this record is to determine if plaintiff established the existence of a substantial and *bona fide* dispute, and if so, whether the trial court's failure to conduct a section 2 hearing constitutes reversible error.

In addition to the arguments of plaintiff's counsel before the trial court referred to in the above-quoted record, plaintiff also cites other portions of the record and other arguments of counsel which he contends presented to the trial court the existence of a substantial and *bona fide* dispute. Initially, we note that plaintiff argues in his appellate brief that he apprised the trial court of the bases of his fraud claim several times in chambers with all parties present between July and October 1983. Despite his reliance on these in-chambers discussions, these meetings were never transcribed and thus, his fraud claim which requires this court to review the facts cannot be based upon these discussions in chambers which are *de hors* the record. See *Berner v. Kielnik* (1983), 117 Ill. App. 3d 419, 453 N.E.2d 729.

Plaintiff also asserts that his verified second amended complaint sufficiently raised the bases for his fraud in the inducement claim. Boodell counters that since the motion to file the second amended complaint was not allowed by the trial court until after plaintiff filed his notice of appeal, it cannot provide support for plaintiff's claim. Review of the chronology of the pleadings is necessary to resolve

this issue. Plaintiff's initial and first amended complaints contained no allegations of fraud concerning the 1980 agreement. However, certain defendants filed an emergency motion to vacate *ex parte* order and dissolve mandatory injunction in which they referred to the parties' agreement attached to plaintiff's complaint, raised the arbitration clause in that agreement, and requested that plaintiff's cause of action be stayed pending resolution of the dispute in arbitration. In response, plaintiff filed his second amended complaint on July 26, 1983, which added Boodell as a defendant and contained a count in rescission. That same day, plaintiff filed a motion pursuant to section 2—616 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—616) for leave to file the second amended complaint. The trial court acknowledged and continued plaintiff's motion until August 1, 1983, the date of the scheduled pretrial conference, and stated:

> THE COURT: I'll let you file it today. I'll continue it until August 1st. You can file it, but I will continue it—
>
> MR. FISCHER: What are you continuing exactly?
>
> THE COURT: You're filing your motion. I'm continuing whether or not I'm going to grant you leave until August 1st."

Plaintiff asserts he requested the court during in-chambers status calls on August 1, October 4, and October 19 to rule on the motion, but that the court refused to rule on plaintiff's motion and instead set a new status call date of November 8, 1983. Prior to the November status call, plaintiff filed on October 28, 1983, a motion to stay the arbitration proceeding which the court denied that day. Plaintiff filed his notice of appeal on November 4, 1983, and on November 9, 1983, the trial court granted his motion to amend his complaint.

■ Boodell argues that because the appellate court's review of an interlocutory order is limited to what occurred at trial prior to the appeal, we cannot consider the allegations in the second amended complaint filed after the notice of appeal. However, the second amended complaint was allowed to be filed even though the court reserved ruling on granting or denying the motion for four months. Therefore, the fraud allegations in the second amended complaint were before the court prior to plaintiff's request for a stay of the arbitration agreement. Boodell has cited no authority for the proposition that an amended complaint filed and placed in the trial court record cannot be considered by the trial court in acting on a subsequent motion to stay arbitration. Therefore, the filed and

verified second amended complaint was available to the trial court in granting or refusing plaintiff's stay request. Additionally, the second amended complaint is part of the appellate record, for "[t]he trial court record includes any report of proceedings prepared in accordance with Rule 323 *and every other document filed* and judgment and order entered in the cause." (Emphasis added.) (87 Ill. 2d R. 321.) Thus, this court can consider the allegations in the second amended complaint in determining whether plaintiff established a substantial and *bona fide* dispute regarding the existence of an agreement to arbitrate.

■ Boodell contends that even if the fraud claims were before the court, they are insufficient because plaintiff did not allege a misrepresentation or concealment of a material fact, a prerequisite for a fraud cause of action. To constitute fraud sufficient to invalidate a contract, a representation must be one of material fact made for the purpose of inducing the other party to act, must be known to be false by the maker but reasonably believed to be true by the other party, and must be relied upon to the other party's detriment. (*Ainsworth Corp. v. Cenco, Inc.* (1982), 107 Ill. App. 3d 435, 437 N.E.2d 817.) Fraud in the inducement vitiates the contract and renders the agreement voidable at the option of the injured party. *Bresler Ice Cream Co. v. Millionaires Club, Inc.* (1966), 71 Ill. App. 2d 342, 218 N.E.2d 891.

Boodell contends the arbitration agreement signed by plaintiff discloses that Boodell intended to act as attorney for Grane, Sr., and as the arbitrator. However, in paragraph 23 of count VIII of the verified second amended complaint, plaintiff alleged that Boodell failed to disclose that Boodell was acting and continued to act as attorney for Grane, Jr. In paragraph 24, plaintiff alleged that Boodell failed to disclose his law firm's representation of defendant Daniel T. Grane in another lawsuit.

■ In *Merit Insurance Co. v. Leatherby Insurance Co.* (7th Cir. 1983), 714 F.2d 673, *cert. denied* (1983), 464 U.S. 1009, 78 L. Ed. 2d 711, 104 S. Ct. 529, the Court of Appeals for the Seventh Circuit citing section 18 of the American Arbitration Association (AAA), Commercial Arbitration Rules and Canon IIA of the Code of Ethics for Arbitrators in Commercial Disputes recognized an arbitrator's continuing duty to disclose any existing financial, business, or professional relationship which is likely to affect his impartiality or create a reasonable appearance of bias. (714 F.2d 673, 678.) Unlike here, however, in *Merit* the arbitration was conducted under the auspices of the AAA and the challenged arbitrator was appointed from a list

formulated by the AAA. These rules, however, are derived from the more general proposition that parties expect their chosen arbitrator to act impartially. (See *Commonwealth Coatings Corp. v. Continental Casualty Co.* (1968), 393 U.S. 145, 21 L. Ed. 2d 301, 89 S. Ct. 337.) As the Supreme Court said in that case when interpreting section 10 of the Federal Arbitration Act:

> "This rule or arbitration [section 18 of the AAA Rules] and this canon of judicial ethics rest on the premise that any tribunal permitted by law to try cases and controversies not only must be unbiased but also must avoid even the appearance of bias. We cannot believe that it was the purpose of Congress to authorize litigants to submit their cases and controversies to arbitration boards that might reasonably be thought biased against one litigant and favorable to another." (393 U.S. 145, 150, 21 L. Ed. 2d 301, 305, 89 S. Ct. 337, 340.)

We believe Boodell owed a similar duty to disclose even though the record did not disclose that he was chosen according to any specific association rules. However, plaintiff must also show that this nondisclosure amounted to fraud which induced his assent to the arbitration agreement.

■ Courts have recognized that fraud and collusion on the part of the arbitrator will warrant vacating an award, for a party to an arbitration proceeding has a right to the judgment of disinterested and honest men. (See 5 Am. Jur. 2d *Arbitration & Award* sec. 173 (1962), and cases cited therein.) Fraud comprises anything calculated to deceive, as in acts, omissions, and concealment including breach of legal or equitable duty, trust or confidence resulting in damage to another, and encompasses silence if accompanied by deceptive conduct or suppression of material facts constituting active concealment. (*Cf. Russow v. Bobola* (1972), 2 Ill. App. 3d 837, 841, 277 N.E.2d 769, 771 (failure of seller of home to inform buyer of drainage problems amounted to sufficient allegation of fraud to defeat a motion to dismiss).) Here, Boodell is accused of failing to disclose that he represented and continues to represent one of the sons standing to benefit from the allocation of the family businesses. Plaintiff alleged in his verified complaint that this omission was material and fraudulently induced his assent to the arbitration agreement. These allegations raise a substantial and *bona fide* dispute concerning the existence of an arbitration agreement.

During oral argument, Boodell cited this court's decision in *J&K Cement Construction, Inc. v. Montalbano Builders, Inc.* (1983), 119

Ill. App. 3d 663, 456 N.E.2d 889, as support for his conclusion that disclosure of potential arbitrator bias prior to arbitration cured any breach of duty or appearance of impropriety. While Boodell did disclose his concurrent representation of Grane, Sr., plaintiff additionally alleged that Boodell did not disclose his concurrent representation of Grane, Jr., throughout the arbitration process. Because *Montalbano* involved only a *disclosed* relationship creating an appearance of bias, that case is distinguishable from the instant case. We conclude, therefore, that plaintiff's allegation of Boodell's undisclosed concurrent representation of Grane, Jr., while acting as the arbitrator of the family controversy raises a substantial and *bona fide* dispute as to whether plaintiff was fraudulently induced to sign the arbitration agreement.

Because plaintiff raised a substantial and *bona fide* dispute concerning the existence of an arbitration agreement, the trial court erred in denying plaintiff's motion which in part requested the court "to set this matter for hearing with respect to the existence, validity and enforceability of an Arbitration Agreement between the parties herein." Section 2(b) states that upon a finding of a substantial and *bona fide* dispute, that issue *shall* be summarily tried. (Ill. Rev. Stat. 1981, ch. 10, par. 102(b).) The presence of the term "shall" eliminates any discretion on the part of the trial court; it must hold a hearing upon a substantial and *bona fide* showing. The trial court's failure to conduct this hearing in the case at bar was error.

Our conclusion that plaintiff's allegation raised a substantial and *bona fide* dispute does not mean that plaintiff has *proved* fraud. Section 2(b) does not require plaintiff to prove fraud at the initial stage; otherwise, there would be no need for the statute's requirement that the trial court "forthwith and summarily tr[y]" the issue after a showing of the substantial and *bona fide* dispute. All the statute required plaintiff to establish was a substantial and *bona fide* dispute, which he did based upon the verified allegations in his second amended complaint. Therefore, the trial court on remand after hearing the evidence presented must resolve the question whether plaintiff actually was fraudulently induced to sign the arbitration agreement.

■ Defendants contend, however, that this appeal is mooted by the filing of the arbitration award. Plaintiff here seeks a hearing conducted pursuant to section 2(b) (Ill. Rev. Stat. 1981, ch. 10, par. 102(b)), which authorizes the court to stay the arbitration proceeding upon concluding that a substantial and *bona fide* dispute exists. Since the arbitration is concluded, defendants contend, the statutory

relief is ineffective, and thus, the issue is moot. We reject defendants' argument for two reasons. First, plaintiff argues and the record confirms that certain parties have filed petitions to vacate or confirm the arbitration award. Since no rulings on these petitions are contained in the record on appeal, the arbitration is not concluded and a stay order would not amount to the doing of a useless act. Second, although the statute authorizes the court to stay an arbitration "commenced or threatened," we do not read the section 2(b) stay power as the exclusive remedy in a situation such as the one at bar, where the stay application is made while the arbitration is ongoing, but the final order on the application is not entered until after the arbitration hearing has concluded. If after a section 2(b) hearing the trial court determines that no arbitration agreement exists, then even though no arbitration proceeding remains to be stayed, the court can declare the arbitration decision a nullity and the parties will be free to pursue their judicial remedies.

 Also unpersuasive is defendants' contention that section 12 relief is still available to plaintiff, thereby making unnecessary a section 2 hearing. Section 12 provides:

> "Upon application of a party, the court shall vacate an award where:
>
> * * *
>
> (5) There was no arbitration agreement and the issue was not adversely determined in proceedings under Section 2 ***." (Ill. Rev. Stat. 1981, ch. 10, par. 112(a)(5).)

Here, the trial court determined either that no substantial or *bona fide* dispute existed concerning the arbitration agreement, or concluded without a hearing that the two-page document signed by the parties constituted an agreement to arbitrate. Either interpretation of the court's action would amount to an adverse determination under section 2, thereby precluding plaintiff from obtaining section 12 relief. Therefore, we conclude the appeal is not rendered moot simply because Boodell has submitted his arbitration award to the trial court or because of the existence of section 12 remedies.

The order of the circuit court of Du Page County is reversed and the cause is remanded for a section 2 hearing on whether the parties entered into a valid and enforceable agreement to arbitrate.

Reversed and remanded.

UNVERZAGT and SCHNAKE, JJ., concur.