NORTON SARNOFF, Plaintiff-Appellee, v. DE GRAF BROTHERS, INC., Defendant-Appellant.

First District (3rd Division)   No. 1—88—3810

Opinion filed March 28, 1990.

536

Richard J. Puchalski and Richard J. Reimer, both of Doss, Puchalski & Kennan, Ltd., of Chicago, for appellant.

Lawrence G. Fretzin, of Chicago, for appellee.

PRESIDING JUSTICE CERDA delivered the opinion of the court:

Defendant, De Graf Brothers, Inc., appeals from the entry of summary judgment in the favor of plaintiff, Norton Sarnoff, in an action for damages caused because of defendant's defective concrete construction work in plaintiff's building. Defendant argues that the trial court erred in entering summary judgment because there were disputed issues of fact concerning the amount of damages and the bias of the decision by the architect and third-party defendant, Jerome Soltan, who found defendant responsible for the defective work. Defendant also argues that the trial court erred in striking that portion of a counteraffidavit it filed in which the affiant gave his opinion that, rather than defendant, the architect was responsible for the defective work.

Plaintiff alleged that he entered into a written contract with defendant to provide concrete work and that defendant warranted that the work would be free of defects. The work was completed around March 1984. Plaintiff alleged that he observed that the concrete floor was emitting dust, spalling, flaking and deteriorating within the first year. Plaintiff hired an engineer to inspect the floor; the cost of testing was $2,670. The test report stated that the concrete work had been improperly performed. Plaintiff alleged that the contract provided that defendant was responsible for the cost of testing if the tests revealed a failure in workmanship.

It was further alleged that on January 8, 1987, the architect made a decision finding defendant responsible for the defective work. Plain-

tiff demanded that defendant repair the defects but defendant refused. Under the contract, if a demand for arbitration was not made within 30 days of the architect's decision, the decision was final and binding. Defendant did not demand arbitration, and plaintiff alleged that defendant was thereby bound by the architect's decision and was liable for the repair. Plaintiff also requested damages of $15,000 for the repairs.

Plaintiff and defendant entered into AIA Document A101, "Standard Form of Agreement Between Owner and Contractor." Incorporated into the contract was AIA Document A201, "General Conditions of the Contract for Construction." The following terms were included in this latter document. Nothing in the documents was to create any contractual relationship between the architect and the contractor. The architect was the owner's representative during construction and until final payment. Claims, disputes and other matters in question between the contractor and the owner relating to the execution or progress of the work or the interpretation of the contract documents were to be referred initially to the architect for decision which was to be rendered in writing within a reasonable time. In the architect's capacity as interpreter and judge, he was to exercise his best efforts to ensure faithful performance by both the owner and the contractor and was not to show partiality to either.

Any claim, dispute or other matter referred to the architect (with certain exceptions not applicable here) was subject to arbitration upon the written demand of either party. If an architect's decision was made in writing and stated that it was final but subject to appeal, a demand for arbitration was to be made within 30 days after the decision was received. The failure to demand arbitration within this period resulted in the architect's decision becoming final and binding upon the owner and contractor.

The contract also provided that the architect was not responsible for the acts or omissions of the contractor or any other persons performing any of the work. The contractor warranted to the owner and architect that all work was of good quality, free from faults and defects, and in conformance with the contract documents. A claim of damage to property was to be made in writing to the party claimed to be responsible within a reasonable time after the first observance of the damage. The making of final payment was not to constitute a waiver of claims arising from faulty or defective work appearing after substantial completion. The architect had the authority to require special inspection or testing of the work even when completed if his opinion was that it was necessary or advisable to ensure the proper imple-

mentation of the intent of the contract documents. If special inspection or testing was deemed necessary by the architect after the commencement of work and revealed a failure of the work to comply with the contract requirements, the contractor was to bear all costs.

The contractor was to promptly correct all work rejected by the architect as defective or failing to conform to the contract documents whether observed before or after substantial completion and whether or not fabricated, installed or completed. The contractor was to bear all cost of correcting such rejected work. If within one year after the date of substantial completion or within such longer period as may be prescribed by law any of the work was found to be defective, the contractor was to correct it promptly after receipt of written notice. If the contractor failed to correct defective work, the owner could correct it.

Attached to the complaint was a letter dated January 8, 1987, from the architect to plaintiff and defendant which stated that after reviewing a report from a material and concrete consultant firm, his final decision was that a portion of the concrete floor had been wearing at a relatively rapid rate and that the problem was due to improper finishing of the cement contractor.

Defendant admitted in its answer to a request to admit facts that it never demanded arbitration, that it knew the concrete floor was emitting dust, and that it received a copy of the architect's decision.

Plaintiff filed a motion for summary judgment in which he argued that the failure of defendant to demand arbitration after receipt of the architect's final decision rendered it binding upon the parties under the contract. Plaintiff quoted from the contract's provisions that: the contractor warranted that all work was to be of good quality and free from faults and defects; the contractor was to bear costs of special testing after the commencement of the work if the architect determined that it was required; and that the contractor was to correct defective work.

Plaintiff filed a "certification in lieu of affidavit" which stated: that defendant was paid the full amount of the contract price for the installation of the concrete floor; that during the first year following completion he noticed the floor was emitting dust, flaking and deteriorating; that during the first year defendant was notified of the conditions and undertook some remedial steps to correct the defect; that defendant agreed to engage engineers to test the floor to determine the cause of the problem; and that he paid $2,670 for testing and $31,900 to correct the defective condition.

The architect's certification was also filed and stated that on nu-

merous occasions he requested that defendant repair the deteriorating condition of the concrete floor.

Defendant was granted permission to file a third-party complaint against the architect. Defendant alleged that the architect determined to use artificial heat during the pouring and drying of the concrete and that one or more of the proximate cause or causes of the defects was excessive carbonization that occurred during the drying or curing. Defendant asked for contribution from the architect for any amount it owed to plaintiff.

Defendant argued in its memorandum in opposition to plaintiff's motion for summary judgment that there were contested issues of fact. Defendant argued that because it claimed that the architect was at fault, the architect would have an interest in blaming someone else for the defective work. Defendant also argued that there was a dispute over the amount of damages because the floor was used for three years prior to repair.

Defendant filed the counteraffidavit of Gunter Hiergeist, defendant's officer and agent, who had been in the concrete business for approximately 32 years. Hiergeist averred that the architect directed that surface heaters be used shortly after the concrete floor was poured and that the use of these heaters caused the floor to carbonize. He did not recall any conversations with the architect in December 1984 regarding deterioration of the floor. In August 1986, tests were performed which indicated that the problem was due to carbonization caused by heating. A copy of the report was stated to be attached as an exhibit but it does not appear in the record. Defendant received notice of the architect's decision in January 1987. Defendant was not made aware of the friendship between plaintiff and the architect when it signed the contract with plaintiff.

Also attached as an exhibit to defendant's memorandum in opposition to summary judgment was a portion of plaintiff's deposition. Plaintiff testified in his deposition that he designated Soltan as the architect on the project because he had done work for plaintiff before. The architect was plaintiff's friend whom he had known for 30 years. The concrete work was completed by defendant in approximately June 1984. The architect supervised the construction project. Problems began in the fall of 1984 with the concrete floor.

Plaintiff moved to strike portions of Hiergeist's counteraffidavit. Plaintiff moved to strike paragraph five of the affidavit, which gave the affiant's opinion that the use of the surface heaters caused the concrete floor to carbonize, on the basis that it was a conclusion. Plaintiff argued at the hearing that Hiergeist was not an expert and

could not render such an opinion. The court struck the opinion on the basis that it was irrelevant. The absence from the record of the laboratory report referred to in the counteraffidavit was noted at the hearing, but a copy was then submitted at the hearing.

Summary judgment was granted in favor of plaintiff in the sum of $34,570. It was also ordered that there was no just reason to delay appeal or enforcement of the order.

Defendant's last argument is that the trial court erred in striking a portion of a counteraffidavit it submitted in opposition to plaintiff's motion for summary judgment. As the information contained in the stricken portion relates to other issues raised by defendant, this issue will be addressed first.

Defendant argues that the trial court erred in striking as irrelevant the second line of paragraph five of Hiergeist's counteraffidavit, which read:

"Jerome Soltan directed that the surface heaters be used shortly after the concrete floor was poured. The use of these surface heaters caused the concrete floor to carbonize."

Hiergeist also stated in the counteraffidavit that he was an officer and agent of defendant and that he had been in the concrete construction business for approximately 32 years.

Defendant argues that the stricken statement was relevant to the issue of who was liable for the damages and that the affidavit met the requirement of Supreme Court Rule 191 (107 Ill. 2d R. 191) by containing "positive detailed averments of fact that would be sufficient evidence if this case proceeded to trial."

Plaintiff argues that the statement did not meet the requirement of the rule because it was a conclusion, there was no proper foundation for the affiant's expertise, and there was nothing in the record to show that the affiant could testify competently thereto. Plaintiff argues that the statement that Hiergeist had been in the concrete construction business for 32 years was insufficient to establish his expertise. Plaintiff argues nevertheless that there were no references to Hiergeist's credentials, experience, academic background, or history to establish his expertise to render an opinion as to causation. Plaintiff also argues that the statement was irrelevant because defendant was responsible to plaintiff for the defect irrespective of the cause (because of the architect's decision which bound the parties).

■ Supreme Court Rule 191 provides that affidavits in opposition to a motion for summary judgment shall be made on the personal knowledge of the affiant and shall not consist of conclusions but of facts admissible in evidence and shall affirmatively show that the affi-

ant could testify competently thereto. (107 Ill. 2d R. 191(a).) An opinion contained in an affidavit must qualify as expert testimony. (*Go-Tane Service Stations, Inc. v. Sharp* (1979), 78 Ill. App. 3d 785, 789, 397 N.E.2d 249.) In *Go-Tane*, the president of a bank stated in a counteraffidavit in opposition to a motion for summary judgment that he examined the markings of checks and concluded that they were not returned prior to a midnight deadline. The affidavit also stated that the affiant had been engaged in the banking business for approximately 25 years. The striking of the affidavit was upheld on the basis that the affidavit did not state specific facts which formed the basis of his conclusion even though the court noted that his 25 years' experience might indicate that the affiant was qualified to express an opinion in regard to the markings on the backs of the checks.

■ Similarly, the opinion of Hiergeist that the heating caused the damages was unsupported by facts. Even if he could be deemed an expert in the concrete construction business, the affidavit does not supply facts which formed the basis of his conclusion, *i.e.*, why did the heaters cause the carbonization? The laboratory testing report which is referred to elsewhere in the counteraffidavit may have shed light on this issue, but it is not in the record. Therefore, the trial court properly struck that portion of paragraph five containing the affiant's unsupported opinion.

Defendant also argues that summary judgment was improperly entered in favor of plaintiff because there was a genuine issue of fact as to the motive and intent of the architect. Defendant argues that the architect who made the decision was an interested party with a personal stake in the outcome of the litigation; however, the architect's decision finding defendant responsible for the defective work was made prior to the institution of litigation against the architect. There therefore is no basis to find that there was an issue of material fact as to the architect's motive in making his decision.

■ Defendant also argues that the architect's decision was a nullity because he was passing judgment on an error for which he was responsible. Defendant is apparently arguing that the architect's decision was not legally binding under the contract so that as a matter of law plaintiff was not entitled to summary judgment. But it was not established that in fact the architect was responsible for the defect. Defendant relies only upon his counteraffidavit's statement, which was properly stricken, that the architect's directions concerning heating were the cause of the defect.

■ The contract made the architect's decision regarding responsibility for the defect binding because defendant did not appeal to an

arbitrator. Even if there were some indication of impropriety by the architect, there is no support for defendant's argument that the architect's decision was not binding even though no demand for arbitration of the decision was made when it is alleged subsequently that the architect was biased in making the decision because he in fact was responsible for the defect.

Defendant cites *Paschen Contractors, Inc. v. John J. Calnan Co.* (1973), 13 Ill. App. 3d 485, 486, 300 N.E.2d 795, in which the contractor sought a stay of arbitration on the ground that there was no agreement to arbitrate any of the items sought by respondent. The arbitration clause excluded the architect's determinations of amount, quality, acceptability and fitness of work. The court held that the contract did not give the architect the power to pass upon his own errors and that a subcontractor could not be required without compensation to perform extra work not encompassed in the architect's deficient plans. (*Paschen*, 13 Ill. App. 3d at 490.) The court held that, therefore, the items concerning fees for the extra work due to the architect's omissions were not matters to be decided by an architect and thus were not excluded from the general arbitration clause. (*Paschen*, 13 Ill. App. 3d at 490.) The court did not hold that if an architect made a decision that involved making a judgment on his own errors, the contractor did not have to make a demand to arbitrate that decision which was not binding.

Defendant also cites *Edward Edinger Co. v. Willis* (1931), 260 Ill. App. 106, in which there was a finding of arbitrary conduct amounting to constructive fraud by the architect in the course of construction. In *Cerny Pickas & Co. v. Dallach* (1928), 249 Ill. App. 424, also cited by defendant, an architect in concert with the owner was found to have improperly withheld a final certificate which apparently prevented the contractor from receiving full payment. In neither case was the failure to demand arbitration of an architect's decision an issue.

■ Even if a contractor does not have to demand arbitration of an architect's decision that is tainted by bias or fraud because the decision is therefore not binding, the friendship of the architect and plaintiff alone was not a sufficient reason to find bias or fraud of the architect as a matter of law even under defendant's analogy to cases in which arbitrators' awards are overturned because the arbitrator had a direct, definite, and demonstrable interest in the outcome (*Lucke, Inc. v. Spiegel* (1970), 131 Ill. App. 2d 532, 536, 266 N.E.2d 504) or where a substantial undisclosed circumstance or relationship was likely to create a presumption of bias (*Freeport Construction Co.*

*v. Star Forge, Inc.* (1978), 61 Ill. App. 3d 999, 1003, 378 N.E.2d 558).

Defendant also cites cases in which it was held that parties to contracts must exercise contractual discretion reasonably and with proper motive. (*Foster Enterprises, Inc. v. Germania Federal Savings & Loan Association* (1981), 97 Ill. App. 3d 22, 30, 421 N.E.2d 1375.) However, these cases are distinguishable because the architect was not a party to the contract although the contract governed his conduct. Even if the good-faith requirement between parties applied to the architect, there was no genuine issue of fact raised as to the architect's good faith.

▮ Also, defendant does not argue that the architect's responsibility for the defect was discovered only after the time for the demand for arbitration had expired. Defendant could have demanded arbitration of the decision if it felt that the architect was to blame and that he was biased in favor of plaintiff. Under these facts it is not unfair to uphold summary judgment in favor of plaintiff on the basis that the architect's decision was binding on the parties.

Defendant also argues that there were disputed issues concerning damages which precluded the granting of summary judgment. Defendant argues that the floor was used for over three years prior to repair and that it should not be required to pay for three years' wear and tear. Defendant argues that disputes over the amount of damages precluded summary judgment and that plaintiff had the duty to mitigate damages.

▮▮ Plaintiff alleged in his motion for summary judgment that he paid $31,900 to correct the defective concrete floor. Defendant has not factually supported his argument that plaintiff could have mitigated his damages or that the cost of repair would have been less if performed earlier (which he implicitly argues should have been done). An issue of material fact is not created by the mere allegation of its existence without a presentation of a statement of fact to contradict the movant's version. (*Illinois Valley Minerals Corp. v. Royal-Globe Insurance Co.* (1979), 70 Ill. App. 3d 296, 303, 388 N.E.2d 253.) The trial court did not err in entering summary judgment because there was no genuine issue as to damages.

The judgment of the circuit court is affirmed.

RIZZI and WHITE, JJ., concur.