THOMAS DRINANE *et al.*, Plaintiffs-Appellees, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellant.

First District (4th Division) No. 1—91—0279

Opinion filed December 5, 1991.

McMORROW, J., specially concurring.

James J. Hoffnagle, of Taylor, Miller, Sprowl, Hoffnagle &· Merletti, of Chicago, for appellant.

William S. Wojcik, of Wojcik & Wojcik, of Chicago, for appellees.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The plaintiffs, Thomas, Edward, and Geraldine Drinane, filed a petition to vacate an arbitration award made pursuant to the uninsured motorist claim of Thomas Drinane against State Farm Mutual

Automobile Insurance Company. After answering the petition, State Farm moved for summary judgment. The trial court denied State Farm's motion. The plaintiffs' motion for summary judgment was granted, and State Farm's petition for reconsideration was denied. State Farm follows with this appeal.

Following an accident involving an uninsured motorist, the plaintiffs, the Drinanes, made a claim against State Farm. Under the terms of the policy, the claim was submitted to the American Arbitration Association, which selected E. Steven Yonover as the arbitrator. State Farm was represented in the arbitration by the law firm of Querrey & Harrow, Ltd. During the arbitration proceedings, Yonover was acting as an attorney for other plaintiffs in a pending unrelated lawsuit. Yonover's plaintiffs were proceeding against a party insured by State Farm and represented by Querrey & Harrow, Ltd. Yonover did not disclose his involvement in the pending lawsuit to the American Arbitration Association or the parties to the arbitration. Yonover rendered an award for the plaintiffs in the amount of $27,000.

■ In arguing for vacatur of the arbitration award, the plaintiffs asserted that pursuant to the rules of the American Arbitration Association, Yonover should have disclosed his involvement in the pending lawsuit. Under Rule 9 of the American Arbitration Association Accident Claims rules, an arbitrator is required to "disclose any circumstances likely to create a presumption of bias which might disqualify [the] arbitrator as an impartial arbitrator." The plaintiffs alleged that Yonover's pending lawsuit was a relationship which created an appearance of bias against the plaintiffs. The Drinanes' attorney asserted that had he known of the relationship between Yonover, State Farm, and Querrey & Harrow created by the pending lawsuit, he would have objected to Yonover's appointment as sole arbitrator. The plaintiffs moved for vacatur of the arbitration award pursuant to the Uniform Arbitration Act (Ill. Rev. Stat. 1989, ch. 10, par. 112(a)(1)), whereunder an arbitration award procured by "corruption, fraud or other undue means" shall be vacated upon a party's application. The plaintiffs contended that Yonover's failure to disclose the pending lawsuit constituted "undue means."

In the proceedings below, the Querrey & Harrow attorney representing State Farm in the Drinane claim submitted an affidavit attesting that he never talked to Yonover about Yonover's pending claim against State Farm, nor had he ever seen the file concerning Yonover's plaintiffs, or talked with anyone at Querrey & Harrow or State Farm about Yonover's plaintiffs' claim. State Farm's claims superintendent for the Drinane case, Eileen Hauflaire, attested by affi-

davit that she had never communicated in any manner with Yonover concerning either the Drinane claim or Yonover's plaintiffs' claim against the State Farm insured. In her affidavit, Hauflaire stated that she had never handled Yonover's plaintiffs' claim, nor had she communicated with anyone at State Farm about the pending claim. The superintendent who had charge of the Drinane claim before Hauflaire made a similar affidavit, as did the claims specialists handling the Drinane case.

Steven Fruth, the Querrey & Harrow attorney representing State Farm against Yonover's plaintiffs' claim, submitted an affidavit attesting that he had never talked with Yonover, or anyone at State Farm or Querrey & Harrow about the Drinane claim. The State Farm claim superintendent for Yonover's plaintiffs' claim against State Farm's insured stated through affidavit that he had never communicated with Yonover concerning the Drinane claim. Nor had he worked on the Drinane claim or spoken with anyone at State Farm or Querrey & Harrow about the Drinane claim. Fred Schnitzius, the former claims superintendent for Yonover's plaintiffs' case, made a similar affidavit as did the claims specialists.

Yonover testified that he had not been biased in favor of or against either party in the arbitration proceeding. Yonover also attested that his only communication with State Farm concerning his clients' claim was with the State Farm personnel handling that claim. He never talked to Steven Fruth or any State Farm personnel regarding the Drinane claim. The only member of Querrey & Harrow with whom he communicated about the Drinane claim was the attorney representing State Farm in the case.

The trial court denied State Farm's motion for summary judgment on the Drinanes' petition to vacate the arbitration award. The Drinanes' summary judgment motion was granted. State Farm filed a motion for reconsideration of the order vacating the arbitration award. The court denied State Farm's motion for reconsideration and State Farm follows with this appeal.

In arguing their position on appeal, the plaintiffs make in substance the same argument they submitted in their motion for summary judgment. They do not allege that there was any actual bias on Yonover's part. The plaintiffs assert that it is the impression of possible bias that the arbitrator failed to avoid. It was not until oral argument before this court that the plaintiffs clearly articulated that the appearance of bias with which they were concerned was that Yonover, in awarding a low award against State Farm, would curry State Farm's favor in his pending case.

The Drinanes heavily rely upon the case of *Commonwealth Coatings Corp. v. Continental Casualty Co.* (1968), 393 U.S. 145, 21 L. Ed. 2d 301, 89 S. Ct. 337, for the the proposition that it is not only actual fraud or bias that is prohibited, but the mere appearance of bias as well. In *Commonwealth Coatings,* the asserted interest of the arbitrator was that on numerous occasions he had provided services for a fee as an engineering consultant for one of the parties in arbitration. His work for the party-contractor had in some cases involved the very projects involved in the arbitration dispute. The Supreme Court, in a plurality opinion, held that under such circumstances the arbitrator might "reasonably be thought" biased against one litigant, while favorable to another. (*Commonwealth Coatings,* 393 U.S. at 150, 21 L. Ed. 2d at 305, 89 S. Ct. at 340.) Justice J. White, in a narrower concurring opinion, interpreted the Court's ruling as holding that an arbitrator must make a disclosure when he has a "substantial interest in a firm which has done more than trivial business with a party." (393 U.S. at 151-52, 21 L. Ed. 2d at 306, 89 S. Ct. at 340-41 (White, J., concurring).) Because of the tension between the plurality and concurring opinion of *Commonwealth Coatings,* we agree with those courts which have tended to view the opinion as limited in its application. See *Merit Insurance Co. v. Leatherby Insurance Co.* (7th Cir. 1983), 714 F.2d 673, *cert. denied* (1983), 464 U.S. 1009, 78 L. Ed. 2d 711, 104 S. Ct. 529; *Andros Compania Maritima, S.A. v. Marc Rich & Co.* (2d Cir. 1978), 579 F.2d 691.

We also believe that the holding of another case to which Drinane cites, *Calabrese v. State Farm Mutual Automobile Insurance Co.* (1989), 187 Ill. App. 3d 349, 543 N.E.2d 215, must also be considered narrow in scope. In *Calabrese,* the party seeking to vacate an arbitration award alleged in his complaint that the arbitrator had failed to disclose that he was representing other plaintiffs in pending cases against the defendant's insureds, and that the arbitrator had received payment for services from the defendant-insurer in 27 cases. The *Calabrese* court determined that the complaining party's allegations were sufficient "to *plead* a claim for vacatur of the arbitration award." (Emphasis in original.) (*Calabrese,* 187 Ill. App. 3d at 352, 543 N.E.2d at 218.) The *Calabrese* court specifically limited its holding to the pleading stage of the proceedings.

Aside from the factual distinction between *Calabrese* and the present case, this court has stated before that at the summary judgment stage of the proceedings, the parties move beyond an examination of the sufficiency of the pleadings. (*Loyola Academy v. S & S Roof Maintenance, Inc.* (1990), 198 Ill. App. 3d 799, 556 N.E.2d 586,

*appeal allowed* (1990), 133 Ill. 2d 559, 561 N.E.2d 693.) That which may be sufficient to plead a cause of action does not necessarily survive a summary judgment motion. (See *Holland v. Arthur Andersen & Co.* (1991), 212 Ill. App. 3d 645, 571 N.E.2d 777.) Because in the present case the parties are appealing from an order of summary judgment, we do not view *Calabrese* as dispositive.

The use of arbitration as a method of settling disputes is looked upon favorably by the courts (*William B. Lucke, Inc. v. Spiegel* (1970), 131 Ill. App. 2d 532, 266 N.E.2d 504), and all reasonable presumptions indulged in favor of an arbitration award. (See *Sweet v. Steve's Cartage Co.* (1977), 51 Ill. App. 3d 913, 365 N.E.2d 1110.) The burden is on the moving party to present competent evidence to support an assertion that the award should be invalidated. See *Brown v. Atwood* (1922), 224 Ill. App. 77.

An order to vacate an arbitration award must be bottomed upon "very substantial grounds." (See *Giddens v. Board of Education* (1947), 398 Ill. 157, 166, 75 N.E.2d 286, 291.) Illinois courts have held that where vacatur of an arbitration award is sought on the basis of bias on the part of an arbitrator, the interest or bias must be "direct, definite and capable of demonstration, rather than remote, uncertain or speculative." (*Giddens v. Board of Education*, 398 Ill. at 167, 75 N.E.2d at 291.) The Seventh Circuit Court of Appeals in *Merit Insurance Co. v. Leatherby Insurance Co.* (7th Cir. 1983), 714 F.2d 673, 682, has stated that in general "the mood is one of reluctance to set aside arbitration awards for failure of the arbitrator to disclose a relationship with a party."

In coming to grips with the term "undue means" of section 12(a)(1) of the Uniform Arbitration Act, the court in *Seither & Cherry Co. v. Illinois Bank Building Corp.* (1981), 95 Ill. App. 3d 191, 197, 419 N.E.2d 940, 945, stated that the term "refers to some aspect of the arbitrator's decision or decision-making process which was obtained in some manner which was unfair and beyond the normal process contemplated by the arbitration act." The *Seither* court's interpretation of the language of section 12(a)(1) is in keeping with the *ejusdem generis* rule of statutory construction, under which general words that follow particular words are to be construed as meaning things of the same general character, sort, kind or class of those specifically named. (*McEvoy v. Brown* (1958), 17 Ill. App. 2d 470, 150 N.E.2d 652.) Accordingly, the term "undue means" should be construed as meaning something of the general character of "fraud" or "corruption," the more particular terms of section 12(a)(1).

We believe that in the present case the interest that the plaintiffs assert the arbitrator should have disclosed is too remote, uncertain, and speculative to provide the very substantial grounds necessary to vacate an award allegedly procured by "undue means," as contemplated by section 12 of the Arbitration Act. At best, any benefit the arbitrator might have gained by his control over the award against State Farm is indefinite, no more than a bare chance of an advantage.

The closest analogy to the role of an arbitrator is the judiciary. The State of Illinois has established guidelines that prohibit judges from participating in cases in which they have a substantial financial interest. (107 Ill. 2d R. 63, Canon 3 (C)(1)(d).) Under the Code of Judicial Conduct, other interests that are not characterized by ownership, such as the interest the plaintiffs in the present case assert, may also be disqualifying. However, where any "interest other" is alleged, the outcome of the case must substantially affect the interest. (107 Ill. 2d R. 63, Canon 3 (C)(1)(d).) In analyzing a similar rule under the American Bar Association Code of Judicial Conduct, the court in *In re Virginia Electric & Power Co.* (4th Cir. 1976), 539 F.2d 357, 368, noted that a judge "must necessarily consider the remoteness of the interest and its extent or degree" (finding that a judge's interest in the utility's speculative recovery was *de minimis*).

The codes of judicial conduct, as interpreted by case law, appear to recognize that as professionals, judges are capable of and indeed are frequently called upon to observe the finer distinctions of their ethical responsibilities. In the case of *People v. Banks* (1987), 121 Ill. 2d 36, 43, 520 N.E.2d 617, 620, it was argued that it was a conflict of interest for one public defender to represent a party asserting the incompetency of another public defender. In holding that such a situation does not create a *per se* conflict, the Illinois Supreme Court observed that "it is erroneous to assume that public defenders have such an allegiance [to the public defender's office] [that they] are unable to subordinate it to the interests of their clients." (121 Ill. 2d at 43.) Similarly, trial judges regularly hear motions to suppress confessions or other evidentiary matters and after the matters are excluded proceed to hear the case without a jury.

Judges regularly are called upon to adjudicate cases involving attorneys who will be instrumental in determining whether a judge is to be recommended by a local bar association for retention or for other judicial positions. Before the bench may appear members of the judge's former political party who were instrumental in the judge obtaining the position she or he holds. Similarly, former campaign committee members may be involved in the cases the judge hears. A

judge's regular schedule may well include former colleagues on the bench, law clerks, or prosecutors and public defenders. Less dramatic, but far more significant, is the fact that the judge may be called upon to hear cases argued by members of the bar with whom, over decades of practicing law and exercising his judicial duties, the judge has formed warm and enduring friendships.

It is deceptively simple to say that a judge or an arbitrator should disclose all relationships that create a possible appearance of bias. Scrupulous adherence to that nebulous standard would be impractical. The need to maintain the highest of ethical standards must be balanced against the practicality of avoiding every superficial appearance of evil. (*Weglarz v. Bruck* (1984), 128 Ill. App. 3d 1, 9, 470 N.E.2d 21 (Jiganti, J., dissenting).) We also do not believe that the courts should encourage a concept which easily allows disgruntled parties to use the pretext of bias to invalidate awards. See *Commonwealth Coatings Corp. v. Continental Casualty Co.* (1968), 393 U.S. 145, 150, 21 L. Ed. 2d 301, 305, 89 S. Ct. 337, 340 (White, J., concurring).

The idea that a judge or arbitrator must disqualify himself anytime there is an "impression of a possible bias," without more, abandons any confidence that we might put in the ability of the legal profession to assume responsibility for ethical choices. It also has a chilling effect on the desire of judges and arbitrators to participate in those very activities which may make them more effective in their judicial capacity. It is desirable to encourage judges to participate in civic and community activities so that they may bring a thorough knowledge of society's standards and sensibilities to the adjudicatory process. See McKay, The Judiciary and Nonjudicial Activities, 35 Law & Contemp. Probs. 9 (1970).

■■ Similarly, an arbitrator versed in the area of the matter he is called upon to arbitrate cannot but advance the arbitration process through his experience. (See *Andros Compania Maritima, S.A. v. Marc Rich & Co.* (2d Cir. 1978), 579 F.2d 691, 701 ("a principal attraction of arbitration is the expertise of those who decide the controversy").) Such experience does not occur in a vacuum, however. In the present case, State Farm offers the observation that those attorneys who form the accident claims panel of the American Arbitration Association generally practice the law of negligence and have experience handling accident claims. An attorney experienced in handling accident claims will have inevitably come into contact with other attorneys and law firms that handle similar cases. He will also have come into contact with insurance companies, very possibly State Farm, which is one of the largest, if not the largest, insurance company in

the country. It is not only impossible, but undesirable, to expect an arbitrator to have been isolated from such contact.

With these observations in mind, we do not believe that the plaintiffs in the present case have shown the very substantial grounds necessary to support the allegation that the arbitration award should be vacated because it was procured by undue means. Summary judgment in favor of the plaintiffs is reversed.

Reversed.

JOHNSON, J., concurs.

JUSTICE McMORROW, specially concurring:

Although I agree with the majority that the facts of the instant cause do not warrant vacature of the arbitration award, I write separately to record my departure from the majority's analogy between the conduct of arbitrators and the conduct of judges or assistant public defenders. (222 Ill. App. 3d at 811-12.) In my view, the majority's analogy is contrary to the precedent upon which the majority relies and is not relevant to disposition of the instant appeal.

The majority's opinion relies upon the concurring opinion of Justice White in *Commonwealth Coatings Corp. v. Continental Casualty Co.* (1968), 393 U.S. 145, 21 L. Ed. 2d 301, 89 S. Ct. 337, with respect to the appropriate standard by which to gauge an arbitrator's duty to disclose grounds that could reveal the arbitrator's potential bias. In that concurring opinion, however, Justice White distinguished between judges and arbitrators, and specifically noted, "The Court does not decide today that arbitrators are to be held to the standards of judicial decorum of Article III judges, or indeed of any judges. It is often because [arbitrators] are men of affairs, not apart from but of the marketplace, that they are effective in their adjudicatory function. [Citation.]" (393 U.S. at 150, 21 L. Ed. 2d at 305, 89 S. Ct. at 340 (White, J., concurring).) Similarly, in *Merit Insurance Co. v. Leatherby Insurance Co.* (7th Cir. 1983), 714 F.2d 673, upon which the majority also relies, the court emphasized the distinction between the appropriate standard of judicial conduct as compared to that applicable to arbitrators. 714 F.2d at 679, 682; see also *Morelite Construction Corp. v. New York City District Council Carpenters Benefit Funds* (2d Cir. 1984), 748 F.2d 79; *Toyota of Berkeley v. Automobile Salesmen's Union, Local 1095* (9th Cir. 1987), 834 F.2d 751.

The majority's analogy between judges and arbitrators contradicts this precedent. In addition, the majority's analysis may impart a pre-

disposition with respect to evaluation of judicial conduct, as distinguished from conduct of an arbitrator, under circumstances similar to those presented herein. I decline to adopt the majority's analogy, and indicate no opinion respecting standards to be applied in the evaluation of judicial conduct.

The majority's references to standards of judicial conduct, judicial evaluations by local bar associations, friendships between members of the bench and bar, and conflict of interest of the public defender's office are superfluous to the question posed in the instant cause. The heart of the issue in the case at bar is whether the arbitrator's failure to disclose his representation of a nonparty in a separate lawsuit against an insured of State Farm created an appearance of bias sufficient to vacate the arbitration award. Our courts have adopted the Federal standard, drawn from Justice White's concurrence in *Commonwealth Coatings*, with respect to vacature of arbitration awards because of an arbitrator's appearance of bias. See *Calabrese v. State Farm Mutual Automobile Insurance Co.* (1989), 187 Ill. App. 3d 349, 543 N.E.2d 215; *Grane v. Grane* (1985), 130 Ill. App. 3d 332, 473 N.E.2d 1366; *Freeport Construction Co. v. Star Forge, Inc.* (1978), 61 Ill. App. 3d 999, 378 N.E.2d 558; see also *Sarnoff v. De Graf Brothers, Inc.* (1990), 196 Ill. App. 3d 535, 554 N.E.2d 335; *J & K Cement Construction, Inc. v. Montalbano Builders, Inc.* (1983), 119 Ill. App. 3d 663, 456 N.E.2d 889.

Under the Federal court's jurisprudence, an appearance of bias is sufficient to set aside an arbitrator's award where the record shows that the relationship creating the appearance of bias "was so intimate—personally, socially, professionally, or financially—as to cast serious doubt on [the arbitrator's] impartiality." (*Merit*, 714 F.2d at 680.) In order to set aside the arbitrator's award, the "circumstances [must be] such that a man of average probity might reasonably be suspected of partiality" and "must be powerfully suggestive of bias." (*Merit*, 714 F.2d at 681.) Courts have examined "(1) the financial interest the arbitrator may have in the proceeding; (2) the directness and nature of the alleged relationship between the arbitrator and a party to the proceeding; and (3) whether the relationship existed at the same time as the challenged proceeding. [Citation.]" (*Sun Refining & Marketing Co. v. Statheros Shipping Corp.* (S.D.N.Y. 1991), 761 F. Supp. 293, 299.) The courts "pragmatically 'employ[ ] a case-by-case approach in preference to dogmatic rigidity.'" *Sun Refining*, 761 F. Supp. at 298, quoting *Andros Compania Maritima, S.A. v. Marc Rich & Co.* (2d Cir. 1978), 579 F.2d 691, 700.

Applying this precedent to the instant cause, the record discloses insufficient evidence to conclude that the arbitrator's conduct was adequate to set aside his award. Plaintiff points to no more than the circumstance that the arbitrator, in his separate capacity as an attorney in private practice, had a pending lawsuit against an insured of State Farm. There is nothing in the record to reveal that the arbitrator had *any* contact, whether professional, business, or social, with the attorney representing State Farm in the arbitration proceeding. Plaintiff does not contend that the arbitration proceeding was unfair or improper, or that the arbitrator appeared partial or biased in his handling of the arbitration hearing. Moreover, plaintiff is unable to demonstrate that the arbitration award was improper or irregular. In light of all of these circumstances, I agree with the majority's determination that the facts of record in the instant cause did not warrant the vacature of the arbitrator's award because of an appearance of bias.

For these reasons, I specially concur.