JOHN E. REID AND ASSOCIATES, INC., Plaintiff-Appellee, v. WICK-LANDER-ZULAWSKI AND ASSOCIATES, Defendant-Appellant.

First District (4th Division)   No. 1—92—0422

Opinion filed October 14, 1993.—Rehearing denied November 22, 1993.

HOFFMAN, J., dissenting.

Gregory R. Sun and Mark H. Mennes, both of Chicago, for appellant.

Charles F. Marino and David M. Marino, both of Chicago, for appellee.

PRESIDING JUSTICE CAHILL delivered the opinion of the court:

The plaintiff John E. Reid and Associates, Inc. (Reid), and the defendant Wicklander-Zulawski and Associates (WZ) entered into commercial arbitration to resolve a dispute over a licensing agreement. The American Arbitration Association (AAA) conducted the arbitration. The arbitrator ruled in favor of WZ, and Reid entered an application in the circuit court of Cook County under section 12(a)(2) of the Uniform Arbitration Act (Ill. Rev. Stat. 1991, ch. 10, par. 112(a)(2)), to vacate or modify the award. The trial court vacated the arbitrator's award. WZ appealed. We reverse.

On October 29, 1984, the parties entered into a license agreement which granted WZ a nonexclusive license to teach the "Reid Method of Criminal Interrogation and Behavioral Analysis Interviewing" in WZ's seminar "Interview and Interrogation Techniques." The agreement provided that any dispute was to be resolved by arbitration, specifically under the rules of the AAA.

On February 3, 1989, WZ filed a demand for arbitration with the AAA for an alleged breach of the agreement. The AAA submitted a list of 10 arbitrators to the parties. Under AAA rules, WZ struck 5 of the 10 arbitrators and ranked the remaining five in order of preference. WZ's fourth choice was Joel D. Gingiss. Reid struck 8 of the 10 names, listing Gingiss as its first choice. Since Gingiss was the highest ranked mutual choice, the AAA appointed him to be the sole arbitrator of the dispute.

On August 10, 1989, an attorney for WZ wrote a letter to Gingiss which revealed that Alan Barry, WZ's intellectual property attorney and potential witness at the arbitration proceeding, was familiar with Gingiss. Barry had helped negotiate the license agreement for WZ but was not to be an attorney of record at the arbitration proceeding. On August 17, Barry wrote a letter to WZ explaining his relationship with Gingiss. A copy of this letter was sent to Reid's attorneys and Gingiss on September 12. Barry's letter stated in part: "While I have met Mr. Gingiss on a couple of occasions, I have no on-going personal or business relationship with him. Mr. Gingiss is known to me by the fact that he has maintained a personal and business relationship with my parents." Barry explained his parents had owned a Gingiss Formalwear Center franchise since 1970, while Gingiss was the president of Gingiss International, the franchisor of the stores. Barry's father was also a

vice-president at Gingiss while Gingiss' father was president of the company.

By letter to the AAA dated September 21, 1989, Reid alleged Gingiss' partiality to WZ, objected to Gingiss serving as arbitrator, asked that Gingiss recuse himself, and asked that another arbitrator be chosen. On October 16, 1989, the AAA confirmed Gingiss' appointment as arbitrator. The record is silent as to the procedures taken by the AAA in evaluating and ruling on Reid's objection to Gingiss.

Before hearings began on December 18, 1989, Reid again objected to Gingiss as arbitrator. Gingiss denied the objection and proceeded with the hearing. Barry testified for WZ at the hearing as both an occurrence witness and an expert witness. His testimony concerned his dealings with Reid's attorneys when the license agreement was drafted and the legal significance and scope of the agreement.

On February 14, 1990, Gingiss ruled and entered an award favorable to WZ. On March 6, 1990, Reid moved before the AAA to vacate the award, to allow another hearing before a different arbitrator, and to modify the award. Gingiss and the AAA denied the motion to modify the award, but did not rule on the motion to vacate based on partiality.

On May 14, 1990, Reid filed an application in the circuit court of Cook County to vacate or modify the arbitration award. The application contained four counts. The first count alleged partiality of the arbitrator. WZ answered the complaint in July of that year, and on June 18, 1991, Reid moved for summary judgment on the partiality count. At a hearing on September 23, 1991, the trial court found that Gingiss should have recused himself, but that Reid waived the partiality objection by not petitioning the circuit court for Gingiss' removal before the arbitration proceeding began. The court entered an order denying Reid's motion for summary judgment. Reid filed a motion for reconsideration and WZ filed a motion for summary judgment on the first count. On reconsideration, the court granted Reid's motion for summary judgment and denied WZ's similar motion. The court vacated the arbitration award and remanded the matter to the AAA for a new hearing with an arbitrator other than Gingiss. WZ appealed.

In addition to the facts above, Reid puts forth several other facts to justify a finding of partiality on the part of Gingiss. These facts became known to Gingiss after the arbitration hearing. First, Barry's time sheets revealed that he took part in WZ's choice of ar-

bitrator. Second, on January 16, 1990, an attorney for WZ (not Barry) wrote a letter to the AAA's administrator, a copy of which was sent to Gingiss. In the letter, WZ informed the AAA that its expert witnesses had provided all the law necessary to decide the issue and that no further legal research on the part of the arbitrator was necessary. Reid objected to this direct contact between WZ and the arbitrator by letter to the AAA dated January 22, 1990.

In Illinois, arbitration is governed by the Uniform Arbitration Act (Act) (Ill. Rev. Stat. 1991, ch. 10, par. 101 *et seq.* (now codified as 710 ILCS 5/1 (West 1992))). The Act validates arbitration agreements and provides the circumstances under which an arbitration award may be confirmed, modified, or vacated by the circuit court. (Ill. Rev. Stat. 1991, ch. 10, par. 101 *et seq.*) Section 12 of the Act provides that an award may be vacated where: "(a) *** (2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any one of the arbitrators or misconduct prejudicing the rights of any party ***." Ill. Rev. Stat. 1991, ch. 10, par. 112(a)(2).

The rules of the AAA, which were incorporated into the parties' license agreement, provide in pertinent part:

> "Any person appointed as neutral arbitrator shall disclose to the AAA any circumstance likely to affect impartiality, including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or their representatives. *** Upon objection of a party to the continued service of a neutral arbitrator, the AAA shall determine whether the arbitrator should be disqualified and shall inform the parties of its decision, which shall be conclusive." Commercial Arbitration Rules, R. 19 (1988) (Rules of the AAA).

The Code of Ethics for Arbitrators in Commercial Disputes (the Code), adopted jointly by the American Bar Association and the AAA, provides ethical guidelines for the recusal of an arbitrator. Canon II of the Code states:

> "A. Persons who are requested to serve as arbitrators should, before accepting, disclose: ***
>
> (2) Any existing or past financial, business, professional, family or social relationships which are likely to affect impartiality or which might reasonably create any appearance of partiality or bias. Persons requested to serve as arbitrators should disclose any such relationships which they per-

sonally have with any party or its lawyer, or with any individual whom they have been told will be a witness. ***

B. Persons who are requested to accept appointment as arbitrators should make a reasonable effort to inform themselves of any interests or relationships described in Paragraph A above.

C. The obligation to disclose *** is a continuing duty which requires a person *** to disclose, at any stage of the arbitration, any such interests or relationships which may arise, or which are recalled or discovered.
***

E. *** In the event an arbitrator is requested to withdraw by less than all the parties because of alleged partiality or bias, the arbitrator should withdraw unless either of the following circumstances exists:

(1) If an agreement of the parties, or arbitration rules agreed to by the parties, establishes procedures for determining challenges to arbitrators, then those procedures should be followed; or

(2) If the arbitrator, after carefully considering the matter, determines that the reason for the challenge is not substantial, and that he or she can nevertheless act and decide the case impartially and fairly, and that withdrawal would cause unfair delay or expense to another party or would be contrary to the ends of justice." Code of Ethics for Arbitrators in Commercial Disputes, Canon II.

On appeal, WZ contends the trial judge erred in granting Reid's motion for reconsideration and summary judgment. It argues: (1) there was no failure to disclose by Gingiss because his relationship with Barry's parents was already known to the parties; (2) the AAA did not err in refusing to replace Gingiss because his relationship with Barry's parents was too attenuated to constitute evident partiality; and (3) Reid waived his objection to partiality by waiting until after the arbitration was over to file an action in the circuit court.

Reid presents three reasons why the award should be vacated: (1) Gingiss failed to disclose an appearance of partiality; (2) the facts demonstrated actual or evident partiality; and (3) the waiver rule does not apply.

We note two elements relevant to the standard on review. First, our review of summary judgment is *de novo*, and we examine the evidence unconstrained by the reasoning of the trial court. (*Out-*

*board Marine Corp. v. Liberty Mutual Insurance Co.* (1992), 154 Ill. 2d 90, 607 N.E.2d 1204.) For summary judgment to be justified, there must be no genuine issue of material fact and the movant must be entitled to judgment as a matter of law. (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005(c) (now codified as 735 ILCS 5/2— 1005(c) (West 1992)); *Outboard Marine*, 154 Ill. 2d at 102.) Second, as a general rule, "[c]ourts of law have long been reluctant to vacate an award for arbitration, and all reasonable presumptions are to be indulged in favor of arbitration awards." (*Drinane v. State Farm Mutual Automobile Insurance Co.* (1992), 153 Ill. 2d 207, 211, 606 N.E.2d 1181, 1183.) The party arguing that an arbitration award is invalid has the burden of proving the contention by clear, strong, and convincing evidence. *Saville International, Inc. v. Galanti Group, Inc.* (1982), 107 Ill. App. 3d 799, 438 N.E.2d 509.

The parties do not contend that there are material factual issues in dispute. Instead, they disagree about what relationships require disclosure by an arbitrator and what relationships require the removal of an arbitrator or the vacating of an arbitrator's award.

That the two issues involve different standards is demonstrated by our disposition of an arbitration case between Thomas Drinane, a pedestrian injured by an uninsured motorist, and State Farm Automobile Mutual Insurance Company, his insurer. (*Drinane v. State Farm Mutual Auto Insurance Co.* (1991), 222 Ill. App. 3d 805, 584 N.E.2d 410.) The dispute was submitted to arbitration. The arbitrator ruled in Drinane's favor, but substantially below the policy limits. Drinane moved in the circuit court to vacate the award on the grounds that the arbitrator failed to disclose an appearance of partiality. Drinane had learned after the award that the arbitrator was an attorney representing litigants in a separate suit against State Farm. The circuit court granted Drinane's motion for summary judgment on his petition, and State Farm appealed. *Drinane*, 222 Ill. App. 3d at 806-08.

The appellate court reversed, finding the relationship too remote and speculative to require disclosure. (*Drinane*, 222 Ill. App. 3d at 813.) The supreme court affirmed the appellate court's reversal of summary judgment but departed significantly from the appellate court's reasoning. (*Drinane v. State Farm Mutual Automobile Insurance Co.* (1992), 153 Ill. 2d 207, 606 N.E.2d 1181.) The supreme court held that the arbitrator *was* under a duty to disclose his pending suit against State Farm. (*Drinane*, 153 Ill. 2d at 217.) The court emphasized that arbitrators, like judges, must strive to avoid even the appearance of bias and that disclosure would in no

way hamper the effectiveness of arbitration. (*Drinane*, 153 Ill. 2d at 214-15.) The failure to disclose the other suit created a presumption of bias, but the court allowed the presumption to be overcome by evidence that there was no connection between the parties in Drinane's action and the parties in the arbitrator's other action with State Farm. So, although the supreme court found a failure to disclose, they declined to vacate the award. *Drinane*, 153 Ill. 2d at 216-17.

Our supreme court relied on *Commonwealth Coatings Corp. v. Continental Casualty Co.* (1968), 393 U.S. 145, 21 L. Ed. 2d 301, 89 S. Ct. 337, in holding that the arbitrator in *Drinane* had a duty to disclose. In *Commonwealth Coatings*, one of three arbitrators did not disclose that he had sporadic business dealings with one of the parties over a period of four or five years before the arbitration, resulting in fees of $12,000. After the award, the other party learned of the relationship and moved to vacate. The Supreme Court so ordered. *Commonwealth Coatings*, 393 U.S. at 146-47, 21 L. Ed. 2d at 303, 89 S. Ct. at 338.

■ Reid contends that, like the arbitrator in *Commonwealth Coatings*, Gingiss did not disclose his relationship with the witness' father and that the award should be vacated. The question of whether Gingiss had a duty to disclose, however, is made irrelevant by Barry's own disclosure of the relationship. We believe the reasoning of the court in both *Drinane* and *Commonwealth Coatings* is not applicable to the present case because the parties in those cases did not know of the relationship until after the arbitration award. However, due to Barry's disclosure in this case, Reid was given the chance *before* the arbitration to avail himself of the procedures to remove an evidently partial arbitrator. Reid did so, and the AAA and Gingiss denied his objection.

Reid makes two responses to this argument. He first argues that the full nature of Gingiss' bias was not revealed until after the arbitration hearing. But this contention is not supported by the record. The only facts learned after the arbitration were Barry's aid in choosing Gingiss and a letter by another of WZ's lawyers to Gingiss after the arbitration. We give little weight to Barry's aid in choosing the arbitrator because WZ ranked Gingiss as its fourth favorite arbitrator, while Reid, the party alleging Gingiss' bias, ranked him first. The letter written by WZ to Gingiss after the hearing may be viewed as an impropriety on their part, but does not demonstrate that Gingiss is partial to WZ.

Second, Reid contends that an arbitrator's duty to disclose is not eliminated simply because it is a witness or a party who first makes known a questionable relationship. We cannot find a statute, ethical guideline, AAA rule, or case which requires an arbitrator to be the first to reveal a relationship with a party's witness. Barry made the revelation four months before the hearing, at a time when WZ contends Gingiss had yet to be informed who would be testifying for WZ. Nothing in the record rebuts this claim.

The rules at our disposal only require the arbitrator to disclose questionable relationships which he is aware of and rule on objections brought by the parties. (Rules of the AAA, R. 19; Code of Ethics for Arbitrators, Canon II, §(E)(2).) They do not require the arbitrator, after disclosure of a relationship has been made by one of the parties, to confirm or deny the relationship, expound on it, or create any kind of record relating to it. Of course, if the relationship was larger than that revealed, the arbitrator would be under a duty to reveal such circumstances. (Code of Ethics for Arbitrators, Canon II, §(C).) But in the absence of further disclosure by the arbitrator, it should be presumed that a full disclosure has been made. We emphasize that the party alleging partiality has the burden of coming forth with some evidence of bias, and we hold this to be true even after the basic facts of a relationship have been revealed by the other party or a witness. *Saville International, Inc.*, 107 Ill. App. 3d at 800.

Here, Gingiss and the AAA conferred on Reid's objection based on Barry's disclosure and denied the objection. This procedure complies with Rule 19 of the Rules of the AAA and Canon II of the Code of Ethics for Arbitrators set out earlier in this opinion. We decline to announce a rule solely of our own creation which compels an arbitrator to do more than is required by the AAA's own rules and the arbitrator's ethical code.

Reid also presents the direct issue of whether the facts disclosed were proof enough that Gingiss was partial. The key question is what constitutes "evident partiality" on the part of an arbitrator that would require the award to be vacated. Neither the Rules of the AAA, the Code, nor the Illinois Uniform Arbitration Act provides a precise answer. This court has stated that the interest or bias of an arbitrator must be "direct, definite, and capable of demonstration rather than remote, uncertain, or speculative." *William B. Lucke, Inc. v. Spiegel* (1970), 131 Ill. App. 2d 532, 536, 266 N.E.2d 504, 508.

While several courts have expounded on the standard of impartiality for arbitrators, few Illinois cases have created controlling authority. In *Lucke*, the court refused to set aside an arbitration award when one of the witnesses briefly worked for one of the arbitrators 14 years before the arbitration hearing. (*Lucke*, 131 Ill. App. 2d at 536.) In *Saville*, the court declined to set aside an award when one of the arbitrators told counsel for the plaintiff that the fees paid by the parties could be directly proportioned to the merits of their claim. *Saville*, 107 Ill. App. 3d at 800; see also *Merit Insurance Co. v. Leatherby Insurance Co.* (7th Cir. 1983), 714 F.2d 673 (differentiating between impartiality standards applied to arbitrators and those applied to judges).

In *Freeport Construction Co. v. Star Forge, Inc.* (1978), 61 Ill. App. 3d 999, 378 N.E.2d 558, the court remanded for an evidentiary hearing on partiality when there were reported business dealings between one of the parties' subcontractors and one of the arbitrators. The subcontractor appeared in the arbitration hearing as a witness, not as a party. The court recognized that a relationship between an arbitrator and a nonparty could establish partiality, but only if the link between the nonparty and the arbitration was substantial. *Freeport Construction*, 61 Ill. App. 3d at 1004.

The court directed the trial court on remand to investigate two elements to determine the partiality of the arbitrator: (1) the relationship between the nonparty and the subject of arbitration, including any interest the nonparty might have in the outcome; and (2) the closeness of the relationship between the arbitrator and the nonparty. (*Freeport Construction*, 61 Ill. App. 3d at 1004-05.) In examining the second element, the trial court was directed to consider how significant, regular, recent, or continuing the relationship was, and whether the party alleging partiality should have reasonably expected the arbitrator to have dealings with the nonparty in the ordinary course of business. *Freeport Construction*, 61 Ill. App. 3d at 1005.

■ After examining the elements in *Freeport Construction*, we find that Reid has not met his burden of establishing clear and convincing evidence in alleging partiality on the part of Gingiss. Reid fails to allege how Gingiss' relationship with Barry's parents would lead him to favor WZ. (See *Commonwealth Coatings Corp. v. Continental Casualty Co.* (1968), 393 U.S. 145, 154, 21 L. Ed. 2d 301, 308, 89 S. Ct. 337, 342 (Fortas, J., dissenting, joined by Harlan & Stewart, JJ.) (" 'Evident partiality' means what it says: conduct—or at least an attitude or disposition—by the arbitrator favoring one

party rather than the other").) Unlike the court in *Drinane*, we do not have the benefit of the testimony of either Barry or Gingiss.

First, we find no substantial relationship between Barry or his parents and the arbitration itself. No allegation is made that either Barry or Barry's parents had an interest in the outcome of the arbitration. The dispute involved a license agreement governing a method of training law enforcement personnel to interrogate suspects. Barry's parents were in the formal wear rental business.

Second, Gingiss' relationship with the nonparty, Barry, was insignificant. Barry met Gingiss several times at social events. Barry's parents conducted business with Gingiss previously for many years. Although Gingiss' relationship with Barry's parents was significant, we find no reason to impart its significance to an arbitration proceeding in which their son acted as a lawyer early in the case and as expert witness at the proceeding. Reid has cited no case where a social and financial relationship with the parents of a lawyer or witness was the sole ground for a finding of partiality or reversal. We decline to make such a rule here.

Several courts and the AAA note that when parties choose arbitration over a court of law, they accept a greater risk that the arbitrator will have a link to some party to the suit. See Code of Ethics for Arbitrators, Canon II, Introductory Note; *Commonwealth Coatings Corp. v. Continental Casualty Co.* (1968), 393 U.S. 145, 150, 21 L. Ed. 2d 301, 305, 89 S. Ct. 337, 340 (White, J., concurring, joined by Marshall, J.) ("It is often because they are men of affairs, not apart from but of the marketplace, that they are effective in their adjudicatory function. *** [A]rbitrators are not automatically disqualified by a business relationship with the parties before them if both parties are informed of the relationship in advance, or if they are unaware of the facts but the relationship is trivial"); *Merit Insurance Co. v. Leatherby Insurance Co.* (7th Cir. 1983), 714 F.2d 673, 679 ("There is a tradeoff between impartiality and expertise. The expert adjudicator is more likely than a judge or juror not only to be precommitted to a particular substantive position but to know or have heard of the parties ***").

Given that the parties voluntarily chose arbitration, the arbitrator merely had a relationship with the parents of one party's witness, and neither the witness nor his parents had an interest in the outcome or substantial relationship to the arbitration, we find no presumption or inference of partiality.

We reverse the order of the trial court granting summary judgment in favor of the plaintiff Reid and vacating the arbitrator's

award. We remand for entry of an order granting summary judgment in defendant WZ's favor.

Reversed and remanded.

JIGANTI,* P.J., concurs.

JUSTICE HOFFMAN, dissenting:

I take no issue with the facts of this case as set out in the majority opinion. The basis of my disagreement is the conclusion that the majority has reached based upon those facts.

In *Drinane v. State Farm Mutual Automobile Insurance Co.* (1992), 153 Ill. 2d 207, 606 N.E.2d 1181, our supreme court addressed the circumstances under which an arbitrator's failure to disclose information as to a relationship that might create an impression of bias can constitute grounds to vacate an arbitration award under section 12(a)(2) of the Uniform Arbitration Act (Ill. Rev. Stat. 1989, ch. 10, par. 112(a)(2)). In formulating its position on the issue, the *Drinane* court relied heavily upon the decision in *Commonwealth Coatings Corp. v. Continental Casualty Co.* (1968), 393 U.S. 145, 21 L. Ed. 2d 301, 89 S. Ct. 337, and concurred with Justice Black's statement that " '[w]e can perceive no way in which the effectiveness of the arbitration process will be hampered by the simple requirement that arbitrators disclose to the parties any dealings that might create an impression of possible bias.' " *Drinane*, 153 Ill. 2d at 214, 606 N.E.2d at 1184, quoting *Commonwealth Coatings*, 393 U.S. at 149, 21 L. Ed. 2d at 305, 89 S. Ct. at 339.

The majority has correctly quoted the provisions of the Commercial Arbitration Rules and the Code of Ethics for Arbitrators. Taken in conjunction, these provisions mandate that an arbitrator disclose any circumstance likely to affect his impartiality, including relationships with witnesses which might reasonably create an appearance of partiality or bias; and, the arbitrator's obligation in this regard is stated in terms of a continuing duty without regard to the stage of the arbitration when the relationship is discovered or recalled. Commercial Arbitration Rules, R. 19 (1988); Code of Ethics for Arbitrators in Commercial Disputes, Canon II, §§(A)(2), (C).

---

*Presiding Justice Jiganti participated in the disposition of this case prior to his retirement.

At the very latest, the arbitrator in the case became aware on August 10, 1989, when he received the correspondence from appellant's attorneys, that Alan Barry, one of appellant's other attorneys, was a potential witness in the arbitration proceeding. All that is known about the relationship between the arbitrator and Barry or his parents is that which was revealed in Barry's letter of August 17, 1989. The record in this case fails to reveal any disclosure on the part of the arbitrator.

The majority states that it can find no rule which requires that the arbitrator be the first person to reveal a potentially disqualifying relationship with a potential witness; nor do I find such a rule. However, that is not the issue. The rules of arbitration and the canons of ethics cited by the majority mandate that the arbitrator make a disclosure, and in this case, none was made. The question is not who should disclose first; the question is whether the arbitrator must disclose.

The majority has found that the arbitrator's relationship with Barry's parents was significant based upon Barry's version of it. I concur in that assessment. The significance of that relationship, in my mind, reasonably creates an appearance of partiality. This is especially true when, as in this case, the witness, Barry, is an attorney who represented one of the parties to the arbitration in the transaction which gave rise to the arbitration proceeding and acted as not only an occurrence witness but also an expert witness on behalf of his client. What more evidence of the reasonableness of an appearance of partiality is necessary than the fact that Barry found the relationship between the arbitrator, himself, and his parents significant enough to disclose? Unlike the majority, I am of the view that the "significant" relationship that the majority has found existed between Barry's parents and the arbitrator, so long as it remained undisclosed and unexplained by the arbitrator himself, gave rise to a presumption of bias of the type found by the supreme court in *Drinane* (153 Ill. 2d at 216, 606 N.E.2d at 1185).

The majority's rationale in this case is reminiscent of that used by a majority of this court to support its decision in *Drinane v. State Farm Mutual Automobile Insurance Co.* (1991), 222 Ill. App. 3d 805, 584 N.E.2d 410, reasoning with which our supreme court did not concur. (*Drinane*, 153 Ill. 2d at 215, 606 N.E.2d at 1184-85.) The majority seems to say that the decision of the trial judge must be reversed because the appellee failed to meet its burden of establishing that the arbitrator was in fact biased. The appellee had no such burden.

In *Commonwealth Coatings Corp.*, the Court stated at the beginning of its opinion that the arbitrator involved had never been accused of fraud or bias in deciding the case before him and that the court itself had no reason, apart from his undisclosed relationship, to suspect him of any improper motives; but, in reversing the arbitrator's award, the Court went on to hold that arbitrators must not only be unbiased, but must avoid even the appearance of bias, since litigants are not required to arbitrate their disputes before a person that might reasonably be thought to be biased against them. (*Commonwealth Coatings*, 393 U.S. 145, 21 L. Ed. 2d 301, 89 S. Ct. 337.) While this court in its opinion in *Drinane* disregarded the standards set out in *Commonwealth Coatings* and found them unworkable, our supreme court embraced them. *Drinane*, 153 Ill. 2d at 215.

In the case at bar, the appellee established: (1) a significant relationship between the arbitrator and the parents of one of its opponent's critical witnesses giving rise to a reasonable appearance of partiality and the presumption of bias; and (2) the fact that the arbitrator made no disclosure of that relationship at any point in the arbitration proceeding. Unlike the facts in *Drinane*, the arbitrator in this case has never explained the circumstances of the relationship giving rise to the presumption of bias. Having established facts giving rise to a presumption of bias on the part of the arbitrator which was unrebutted, the appellee established its right to a vacation of the arbitration award as a matter of law.

It is essential to the continued viability of the arbitration process that arbitrators, unlike the arbitrator in this case, follow the rules of arbitration and the Code of Ethics for Arbitrators and make full disclosure of any relationship they might have with any party or witness that could reasonably give rise to an appearance of partiality. Parties to an arbitration proceeding are entitled to a full disclosure of such relationships from the arbitrator himself and should not be put in a position of having to rely upon their opponent's rendition of the scope of any such relationship as was the appellee in this case.

"[C]ourts should be 'more scrupulous to safeguard the impartiality of arbitrators ***, since [they] have completely free rein to decide the law as well as the facts and are not subject to appellate review.' " *Drinane*, 153 Ill. 2d at 213, 606 N.E.2d at 1184, quoting *Commonwealth Coatings*, 393 U.S. at 149, 21 L. Ed. 2d at 305, 89 S. Ct. at 339.

I would affirm.